——————————

65  313
86   46
65  315
d126 674

[No. 9,201. Department One.—June 4, 1884.]
A. BOORMAN ET AL., RESPONDENTS, v. THE CITY OF SANTA BARBARA ET AL., APPELLANTS.

STREET ASSESSMENTS—AUTHORITY OF CITY COUNCIL.—An act authorizing the common council of a city to lay out, open, or improve a street, upon the petition of property owners representing a majority of the frontage upon the proposed improvement, does not authorize the council to take steps in one proceeding to open or improve more than one street.

ID.—CONSTITUTIONALITY OF ACT—NOTICE.—An act authorizing street improvements, which does not provide for notice of the proceedings to the parties to be assessed for the expense, is unconstitutional and void.

APPEAL from a judgment of the Superior Court of the county of Santa Barbara.

The proceeding was a writ of *certiorari* to review certain proceedings of the mayor and common council of the city of Santa Barbara in changing, opening, and laying out several streets, and making assessments for these purposes under the provisions of the Act of March 26, 1878. (Stats. 1877–78, p. 777.)

The facts sufficiently appear in the opinion of the court.

*Thos. McNulta,* for Appellants.

*Hall & Requa,* and *C. E. Huse,* for Respondents.

The COURT.— 1. The Act of March 26, 1878 (Stats. 1877–78, p. 777), authorizes the common council of the city of Santa Barbara to lay out, etc., any *one* street between certain *termini,* upon presentation of a petition signed by the owners representing a majority of the frontage "upon the proposed improvement." The act does not contemplate the presentation in óne petition of a prayer or demand for the improvement or laying out of more than one street, nor empower the council "to open, extend, widen, straighten, or close up" a great number of streets in one proceeding.

Such is not the ordinary meaning of the language of the act, and a construction which would give legality to proceedings like those reviewed by the Superior Court herein would lead to complications well illustrated by the history of the present case.

2. Even if it should be conceded that the act authorizes the closing of a number of streets greater than one, and the opening, or straightening, or widening of other streets, in one proceeding, it requires a petition to be presented, signed by owners of a majority of the frontage upon each separate street. Otherwise it might happen that a street would be opened against the wish of every one of the owners of property fronting on that street.

3. The power of the council to act depended upon the presentation of a petition such as the act requires.

4. We agree with the court below that the Act of March 26, 1878, is unconstitutional and void. It provides for no process

or notice to be served upon the persons whose property is to be charged with assessments. The only provision as to notice is: "The commissioners shall give notice of the time and place where they will proceed to examine the property *to be affected* by such improvements, by an advertisement in one newspaper published in said city, such time not to be *more* than ten days after the day when said notice shall first be published." (§ 1.) Conceding (for the purposes of this opinion *only*), that a time *not more* than ten days must be at least *one day*—and that a law which provided for but one day's publication of notice would not be held obnoxious to the objection that it practically deprives the citizen of all notice—the act we are analyzing provides for no notice at all addressed to any particular person or class of persons, or which would inform any particular person that, on failure of appearance, any burden would be imposed upon *him*, or his property.

It will be observed, the act neither fixes the boundaries of an assessment district, nor authorizes the common council to fix them. That power is conferred upon the commissioners to be appointed by the council, who are to determine the limits of the assessment district when they shall have ascertained what property will be benefited by the "improvement." It is possible, if the commissioners were authorized to fix the limits of the assessment district, finally or conditionally, in the first instance, and then to give notice—even by publication—to the owners of property within the district, the process would be sufficient. But the act provides only for notice, at most, to all property owners in Santa Barbara. Who can know that *his* property may, by the commissioners, be deemed to be benefited by the proposed improvements? The commissioners are only required to give notice to the world that at a certain time and place "they will proceed to examine the property to be affected." And having given notice of an intention to examine the property to be affected, the law provides that, at the time and place mentioned in the notice, they shall "proceed to examine the land and improvements to be effected (affected) by the proposed improvement, and shall first ascertain the amount of damages to be sustained, the names of the owners of the property to be damaged, and the amount to be paid to each of such owners

thereof. They shall then assess *upon the property to be benefited* by such improvement a sufficient sum to pay the whole amount of said damages, and the fees of said commissioners, and shall apportion the same among the owners of the several parcels of property to be . thus benefited, in proportion to the *amount of benefits* to accrue to each."

Can it be said that the scheme provides any notice to those who own property within the limits of an assessment district not established when the only notice is given?

Judgment affirmed.