JAMES B. POWER, Plaintiff and Appellant *v.* J. D. LARABEE, Defendant and Respondent.

**Taxation — Assessment — Description of Lands — Board of Equalization—Time of Meeting—Notice—Vacation of Tax Deed—Terms.**

1. The plaintiff's lands were sold for the alleged taxes of 1886 to defendant, and subsequently defendant received a tax deed in due form therefor, and recorded his deed. Defendant voluntarily paid the alleged taxes on the land for the years 1837 and 1888. Such lands did not appear on the assessment roll or tax list of the county where they were located in either of said years, otherwise than as follows:

| DESCRIPTION. | SECTION. | TOWNSHIP. | RANGE. |
| --- | --- | --- | --- |
| W. 2 of W. 2 | 7 | 143 | 57 |
| E. 2 of E. 2 | 13 | 143 | 58 |
| W. 2 of S. E. | 15 | 138 | 58 |
| N. 2 N. W. | 3 | 139 | 58 |

—*Held*, that said attempted description of the lands is insufficient as a basis of taxation, and that no valid assessment was made or could be made on such pretended description. The description is not ex-

pressed in common language; nor are the characters and abbreviations employed such as are used by conveyances in describing real estate; nor do the people generally use such a combination of words, letters and figures in referring to or describing land. A description of real estate is essential to its assessment, and, there being no sufficient description in this case, there is no assessment, and consequently no tax.

2. The county board of the county where the lands are situated did not assemble as a board of equalization in either of the years in question on the day fixed by statute nor on the following day. *Held*, that the omission to hold a session at the time and place designated by law also operated to defeat the alleged taxes. The board of equalization cannot lawfully assemble at a time and place other than that fixed by statute. The public is not chargeable with notice of any meeting of such board except that designated in the statute. Taxpayers are invited by the law to attend at an appointed session of the board, and present to the board any grievances which they may have on account of assessments made on their property. No other opportunity for a hearing is given, and, if no session is had at the time and place prescribed, there is no chance to be heard at all. This is fatal to the tax in all cases where the law bases the tax upon an official valuation, and in terms gives the taxpayer an opportunity to be heard. Actual injury need not be shown; the law will presume an injury on grounds of public policy. The items paid by defendant at the tax sale and in subsequent years as taxes were not taxes in law, nor within the meaning of § 75, c. 28, Pol. Code (Comp. Laws, § 1640); and hence it was error to require, as the trial court did require, that said sums should be paid by plaintiff to defendant as a condition upon which the worthless tax deed would be vacated as a cloud on plaintiff's title. BARTHOLOMEW, J., dissenting.

(Opinion Filed Aug. 1, 1891. Rehearing Denied Aug. 29, 1891.)

*A*PPEAL from district court, Barnes county; Hon. RODERICK ROSE, Judge.

*J. E. Robinson* and *Chas. A. Pollock*, for Appellant. *George K. Andrus* and *Edgar W. Camp*, for Respondent.

Action to quiet title. Judgment for defendant. Plaintiff appeals. Judgment modified.

**J. E. Robinson and Charles A. Pollock, for appellant:**

The tax sale and tax deed being confessedly void, there is no presumption of the regularity of any anterior proceeding. A tax deed loses its character as evidence when it is shown that in

any essential particular the proceedings on which it depends were irregular. Lacy v. Davis, 4 Mich. 140-157; Case v. Dean, 16 Mich. 12, 34, 37; Amberg v. Rogers, 9 Mich. 332; Grosbeck v. Sealy, 13 Mich. 414; Rayburn v. Kuhl, 10 Iowa 92; Cooper v. Shepardson, 51 Cal. 299; Bidleman v. Brook, 28 Cal. 75; Thompson v. Ware, 43 Iowa 453; Butler v. Delano, 42 Iowa 350; Williams v. Kirkland, 13 Wall. 306; French v. Edwards, 13 Wall. 514; Blackwell on Tax Titles, 83 D. Note; 2d Desty on Taxation, 961, 969; Johnson v. Elwood, 53 N. Y. 431. The assessment was void on account of there not being a proper description of the lands. Even a tax judgment is void that described land as S 2 N E 4 of a designated section, town and range. Keith v. Hayden, 26 Minn. 212; Tidd v. Rines, 26 Minn. 208. There was no board of equalization. When the statute fixes a time for the meeting of the board of review, and it fails to meet, or for return and filing of the assessment roll for inspection, and it is not filed, the proceeding becomes ineffectual. Wiley on Assessments, 224 and 154; Blackwell on Tax Titles, 131, 118, 122; French v. Adams, 13 Wall. 506. Notice and an opportunity for a hearing is indispensible. Wiley on Assessments, § 154. And see Pierre Water Works v. County of Hughes, 37 N. W. Rep. 733. There was no record of any levy of taxes. Every essential proceeding in the course of a levy of taxes must appear in some written and permanent form in the record of the bodies authorized to act upon them. Cooley on Taxation, 247; Desty on Taxation, 1087; Nosme v. White, 29 Mich. 59. There was no legal sale for the reason that the amount of taxes due, given in the notice prescribed by statute, was only stated by placing opposite the description of each tract, under the heading "amount," certain figures or numerals without anything to show what they indicated. That was clearly insufficient. Wood v. Freeman, 1 Wall. 399; Bradley v. Seaman, 30 Cal. 612; Lawrence v. Fast, 20 Ill. 338; Lane v. Bommelmann, 21 Ill. 143; Eppinger v. Kirby, 23 Ill. 469; Wiley on Assessments, § 225; Cooley on Taxation, 2d Ed. 411; People v. Savings Bank, 31 Cal. 132; Tidd v. Rines, 26 Minn. 208. The trial court found that there was no return to the sale. There must be a lawful return to support a statutory sale and convey-

ance.  Desty on Taxation, 857; Upton v. Kennedy, 36 Mich. 215.  An agreement or understanding between bidders at a tax sale, either express or tacit, that they shall take turns in bidding and not compete against each other, is a fraud upon the law and renders the sale void.  Blackwell on Tax Titles, 111.; State v. Maxwell, 6 Wall. 276; French v. Edwards, 13 Wall. 506; Kerr v. Allen, 31 Iowa 578.  In this case tender or payment is not required.  Barker v. Evans, 27 Minn. 92; Dawson v. Life Insurance Co., 27 Minn. 411; Baker v. Kelly, 11 Minn. 370; Harper v. Row, 53 Cal. 238; Homestead Co. v. Railroad Co., 17 Wall. 153; Conway v. Cable, 37 Ill. 82; Philleo v. Hiles, 42 Wis. 531; 2d Desty on Taxation, 105.

George K. Andrus and Edgar W. Camp, for respondent:

A description which is insufficent to make the tax title good, may be sufficient to give the purchaser at the tax sale a lien for the sum paid.  Cooper v. Jackson, 99 Ind. 566; State v. Casteel, 11 N. E. Rep. 219; Reed v. Earhart, 88 Ind. 159; Milliken v. City of Lafayette, 20 N. E. Rep. 847; Ford v. Kolb, 84 Ind. 198; Sloan v. Sewell, 81 Ind. 180.  The action was in effect one in equity.  Steele v. Fish, 2 Minn. 153; State v. Batchelder, 5 Minn. 223; Brand v. Wheaton, 52 Cal. 430; Leet v. Rider, 48 Cal. 623; Auld v. McAllister, 23 Pac. Rep. 165; Wygart v. Dahl, 26 Neb. 735.  See also Clark v. Smith, 13 Pet. 195; Holland v. Challen, 110 U. S. 15; Lamb v. Farrell, 21 Fed. Rep. 5; Basey v. Gallager, 20 Wall. 770.

The opinion of the court was delivered by

WALLIN, J.  This is an action to quiet title, brought under § 5449, Comp. Laws.  The complaint alleges in effect that the plaintiff is the owner in fee-simple of certain lands described in complaint, situated in the County of Barnes; that defendant claims an interest in the land adverse to plaintiff, and asks that such adverse claim of the defendant be determined and adjudged to be void.  The defendant's answer denies plaintiff's ownership and alleges ownership in himself, and as an affirmative defense states in substance that on the 3d day of October, 1887, the lands were sold to the defendant for the taxes as-

sessed upon them for the year 1886; that in pursuance of such sale the county treasurer of said county of Barnes issued a tax certificate therefor, and subsequently, to-wit, in October, 1889, said county treasurer executed and delivered a tax deed thereof to the defendant. A copy of such deed is annexed to and made a part of defendant's answer. The answer further states that defendant paid out at said tax sale as taxes and for said tax certificates, a certain sum, and subsequently, in February, 1888, defendant paid out a certain other sum as and for the taxes on said lands for the year 1887; and later, to-wit, in June, 1888, paid the taxes on the land for 1888; and that all of said sums were paid prior to the commencement of this action. Defendant further charges " that plaintiff has made no tender to the defendant of the several or diverse sums of money so paid by him for taxes as before set forth, nor has the plaintiff paid the same, as provided in § 75, c. 28, Pol. Code of this state, and prayed that the action be dismissed. Plaintiff served reply to the answer, alleging in detail certain irregularities in the tax proceedings in Barnes county for the years 1886, 1887 and 1888, viz, irregularities in the assessment, equalization, and levy of all of said taxes; also certain irregularities in the sale and return made by the treasurer in 1887, and upon which said certificates and tax deed were made and delivered, as above stated. Plaintiff claimed that by reason of the alleged irregularities set out in the reply said tax deed and all of said taxes and tax proceedings are absolutely void. The trial court found all of the alleged irregularities to be true in fact, and certain of them will be referred to hereafter. The case was tried by the court, and there were voluminous findings of fact, but it will be unnecessary to set out any of the findings except the following: "On the trial of the case the defendant abandoned the claim that by the tax sale he had become the owner in fee of the land, or had any further interest therein except a lien for the taxes which he had paid and interest." "That the tax deed set forth in the answer is a true copy of the deed made to defendant by the treasurer of Barnes county." That in the assessment roll and tax list of Barnes county for the years 1886, 1887 and 1888, said lands were only described as follows:

| DESCRIPTION. | SECTION. | TOWNSHIP. | RANGE. |
|---|---|---|---|
| W. 2 of W. 2 | 7 | 143 | 57 |
| E. 2 of E. 2 | 13 | 143 | 58 |
| W. 2 of S. E. | 15 | 138 | 58 |
| N. 2 N. W. | 3 | 139 | 58 |

—The court finds in substance that the county commissioners of Barnes county did not in either of said years meet as a board of equalization commencing on the first Monday or the first Tuesday of July, and did not meet in the year 1886 until "Thursday, the 8th day of July, 1886." The court, at the defendant's request, found the following as additional findings: "At the time of the assessment, levy, and sale for the taxes of 1886, the plaintiff was the owner in fee of the lands mentioned in the complaint." "The said lands were assessed for taxes by the proper officer in the year 1886. The plaintiff has never paid taxes on said lands for the year 1886. Said lands were sold for the delinquent taxes for the year 1886 by the proper officer on the 3d day of October, 1887, and were bid in by the defendant, or his agent, for the sum of $49.85, which was the amount of taxes, interest, penalty and costs of sale, including fifty cents for the certificate of sale." The court also found that "to protect his interest in said lands arising out of said tax sale" defendant paid the taxes, as alleged, for the years 1887 and 1888, and that none of the taxes paid by defendant have ever been repaid or tendered by the plaintiff. The trial court found the following conclusions of law: "And as a conclusion of law the court finds that the sale of said lands and the deed under which defendant claims title is void, and that the same ought to be adjudged void; and that defendant and all persons claiming under him since the commencement of this action, be barred of any right, title or interest in said land, and enjoined and perpetually restrained from asserting title thereto under said tax sale or deed; and that defendant is entitled to have and recover of plaintiff his costs and disbursements. That the plaintiff ought to pay to defendant the amount which he paid for taxes for the years 1886, 1887 and 1888, with interest thereon at 30 per cent. per annum up to the time for the issuing of tax deeds, and thereafter at 7 per cent. per annum; and that, upon

payment to defendant or into court for the use of defendant, the sum of $217.83, and the further sum of $——, the costs of defendant, to be taxed, the plaintff should have his decree adjuging and decreeing that defendant has no right, title or interest in or to said lands or any part thereof." Upon these findings the district court entered a judgment which conforms in substance to the conclusions of law heretofore set out.

The errors assigned here are in brief that the trial court erred in its conclusions of law based on the facts contained in the findings of fact in this, that the trial court awarded judgment in favor of the plaintiff only on condition that plaintiff should advance and pay defendant's costs of suit; also the sums paid by defendant at the tax sale for the lands, and the sums paid subsequently by defendant as taxes for 1887 and 1888. At the trial defendant abandoned all claim of title to the land which he had alleged in his answer and based upon the tax sale of 1887 and the deed delivered him by the county treasurer in pursuance of such sale; and hence the trial court could not well do otherwise than find as it did, as a conclusion of law, "that the sale of said land and deed under which defendant claims title is void."

The court below does not anywhere state on what particular grounds it bases its conclusion that the tax sale and deed are void, but an examination of the findings of fact, as above set out, furnishes abundant vindication of the conclusion of law as one proper to be made in the case. We find no difficulty in reaching the conclusion from the record that none of the alleged taxes had any legal validity or inception whatever, and that consequently, the tax sale and deed were wholly inoperative as a means of transferring title to the land from the plaintiff to the defendant; and this on account of fundamental defects which go to the groundwork of the alleged taxes. While it is true that the trial court in one of its additional findings states, "said lands were assessed for taxes by the proper officer in the year 1886," yet this general conclusion of the court is practically annulled by another specific finding of fact in which the court declares in substance that said lands were only described in the assessment roll and tax list of said county in the years 1886, 1887 and 1888, in manner and form as detailed in the

finding, which finding we have already quoted. We hold that the alleged description is wholly insufficient as a description of the lands in question, or of any lands, and that it cannot be sustained as a means of identifying the lands for purposes of assessment for taxation, or for the ulterior purpose of transferring the title of the reality from the general owner to the tax title holder and his successors in interest. The alleged description is neither written out in words nor is the same expressed by characters or abreviations commonly used by conveyancers, or generally understood and used by the people at large in describing land. The description of realty placed in an assessment roll is the means of identifying or describing the land for all the subsequent steps in the process of taxation and sale, if a sale is made. The official who makes the tax list and duplicate, and the official who collects the tax, or sells and conveys the land, or certifies to its redemption from sale, are governed by the original description in the roll and are not authorized by law to change the same. It follows that the description of realty in the assessment roll in order to be legally sufficient, must be reasonably full and accurate, though it need not be technically nice and scientifically exact. This view has the support of much authority and we shall adopt it as the safer rule, and be governed by it in this case. Subject to this test, it is unnecessary to say that the pretended description in the assessment roll and lists in question were wholly insufficient. Keith v. Hayden, 26 Minn. 212, 2 N. W. Rep. 495 ; Williams v. Land Co., 32 Minn. 440, 21 N. W. Rep. 550 ; Black, Tax Titles, § 38 ; Cooley, Tax'n, 404. The description in the tax deed is governed by that in the assessment list. Turney v. Yeoman, 16 Ohio, 26 ; Kipp v. Fernhold, 37 Minn. 132, 33 N. W. Rep. 697 ; Bower v. O'Donnall, 29 Minn. 135, 12 N. W. Rep. 352; People v. Cone, 48 Cal. 427, also 431; People v. Mahoney, 55 Cal. 286. The lands referred to in the complaint never having been described in the assessment roll or tax list for the years 1886, 1887 and 1888, it follows necessarily and legally that no tax whatever was assessed against said lands in those years, and also follows that the treasurer of Barnes county had no authority or jurisdiction to sell the lands on account of the alleged

tax of 1886. It is axiomatic that no tax can be laid, under a statute which requires a tax to be laid upon the value, until the value is officially ascertained and declared substantially in the manner the law points out. In other words under our general revenue system there can be no tax upon any piece of land until it is assessed and valued officially, and in substantial compliance with the requirements of the statute which regulates assessments. The process of assessment as it relates to realty is pointed out by statute and is briefly as follows; *First,* the land must be described by separate tracts in lists furnished for the use of the assessor; *second,* the assessor must view the land and reach a conclusion in his own mind as to its value; *third,* the assessor is required to write out opposite each tract in the roll the value as he ascertained it to be, and, *finally,* the assessor is required to swear to the assessment thus made, and annex the proper affidavit to the roll, and then return it to the county clerk or auditor. It is obvious that the whole of this process depends vitally upon the primary act of describing the land. Without a description in writing followed by a valuation stated in writing there can be no assessment of land under the law; and, as before stated there can be no tax without a valid assessment. There can be no such thing as a parol assessment of land. The law requires a definite record, and no other evidence of the assessment is competent. Sections 4, 5, c. 28, Pol. Code, (Comp. Laws, § 1544 *et seq.*); Welty, Assessm. § 4; Black, Tax Titles, § 27. The city tax was held void by this court on the ground of an invalid assessment in Farrington v. Investment Co., 1 N. D. 102, 45 N. W. Rep. 191. See, also, Cooley, Tax'n. 339; Burroughs, Tax'n, 211.

The record also discloses another irregularity in the tax proceedings in question, which, in our opinion, is jurisdictional, and fatal to all of the alleged taxes. It appears that the board of equalization for Barnes county did not, as the law requires, in either of said years assemble on the first Monday in July, nor upon the following day. Whether it assumed to assemble at all in those years is wholly immaterial. Failing to meet at the time designated or upon the following day—a two-day session being prescribed by statute—the county board were with-

out power to assemble and hold a pretended session as a board
of equalization in the same years. The law names the date of
the meeting, and the public is chargeable with notice of a
meeting on the day named in the law; but there is no notice to
the public of any session of the board which meets neither at
the time stated nor at an adjourned day named as a lawful
meeting. Under the system which obtained at the time in
question, our revenue laws did not afford an opportunity to the
taxpayer to be heard by any officer or board touching the
assessment to be made against his property, except at a public
session of the county board sitting as a board of review and
equalization, at the time and place named by the statute. But
if no such session is had in any given year, then no opportunity
is given that year to the taxpayer to be heard, and hence any
so called "taxes" which may be exacted by the officers under
color of law are mere arbitrary burdens upon the taxpayer.
This is not "due process of law" within the meaning of any
system of taxation which expressly authorizes and provides that
the taxpayer may have a hearing upon the question of the
valuation to be placed upon his property for taxation purposes.
It is no answer to this to state that it does not appear that the
plaintiff was injured by the non-assembly of the board at the
time designated. From grave considerations of public policy
the law will presume an injury. Sections 28, 29, Pol. Code
(Comp. Laws, §§ 1584, 1585;) Black, Tax Titles, § 42; Maxwell
v. Paine, 53 Mich. 30, 18 N. W. Rep. 546; Welty, Assem. §
154a; San Mateo Co. v. Southern Pac. R. Co., 8 Sawy. 270, 13
Fed. Rep. 722; Cooley, Tax'n (2d Ed.) p. 751; 1 Desty, Tax'n,
592 ; Commissioners v. Nettleton, 22 Minn. 356. In the case of
Farrington v. Investment Co., 1 N. D. 102, 45 N. W. Rep. 191,
a majority of this court held that where the plaintiff had ap-
peared before the county board while it was sitting and acting
as a board of equalization, and while there presented a petition
to the board, and was accorded a hearing upon the subject-mat-
ter of the valuation to be placed upon certain lands of the
plaintiff, the plaintiff was not in a position to come into a court
of equity and pray for relief upon the ground that the session
was not a lawful session. Under the circumstances existing in

that case, the court declined to go into the question of the legality of the session of the board which the plaintiff was then assailing; but no such facts exist in the case under consideration. We believe that the views which we have taken of the rights of taxpayers and the limitations which the law has placed upon the arbitrary as well as the careless conduct of officials who are charged with the responsibility of raising the revenue for public purposes are highly important and salutary, and that they have the support of the decided weight of authority. It follows from what we have said that the alleged taxes for which plaintiff's lands were sold to defendant, and those subsequently paid voluntarily by the defendant were illegal, and absolutely void, for the reasons already detailed. This fact appearing, the plaintiff was manifestly entitled, under the law and the issues made by plaintiff's reply to the answer, to have defendant's tax deed declared null and void.

Section 75, c. 28, Pol. Code (Comp. Laws, § 1640), has given the courts and the bar much trouble in their attempts to ascertain its proper construction; but of one thing we are clear, and that is that the legislature never intended by this section that mere arbitrary sums exacted by the taxing officers and miscalled "taxes," but which were never lawfully assessed against the land, should be tendered or paid as a condition precedent to bringing suit to quiet title. We think the contrary view would result in rendering the section unconstitutional, because such a construction would involve the taking of the taxpayer's property without due process of law. Black, Tax Titles, § 229; Philleo v. Hiles, 42 Wis. 527; Tierney v. Lumbering Co., 47 Wis., 248, 2 N. W. Rep. 289. It follows that it was error in the trial court to require the plaintiff to tender or pay into the court the sum of $217.84, which defendant had paid out at the tax sale of the land and as subsequent taxes thereon, as a condition upon which plaintiff could enter judgment setting aside the worthless tax deed as a cloud upon his title. It is in a broad sense a moral obligation resting upon every taxpayer to pay a fair and equal tax upon his property. Such obligation, however, does not become legal and enforceable in the courts unless the tax is a substantially legal one. Barber v. Evans, 27

Minn. 92, 6 N. W. Rep. 445. It results from what has been stated that the judgment of the court below must be so modified as to grant the relief demanded by the complaint unconditionally, plaintiff to have and recover costs and disbursements in this court. Such will be the order.

CORLISS, C. J., concurs.

BARTHOLOMEW, J. (*concurring specially.*) I concur in a modification of the judgment in this case upon the first ground stated in the opinion of my Brother Wallin; but upon the second ground I dissent. I do not understand the proceedings of board of equalization to be so far jurisdictional that their inadvertent or unavoidable failure to meet on the day specified in the statute renders the entire tax for that year void. I think the contrary is held in Mills v. Gleason, 11 Wis. 493, and Land Co. v. Crete City, 11 Neb. 344, 7 N. W. Rep. 859; and in effect in Burt v. Auditor General, 39 Mich. 126, and Mining Co. v. Auditor General, 37 Mich. 391 (concurring opinion of Judge Cooley.) It is true, as stated in San Mateo Co. v. Southern Pac. R. Co., 8 Sawy. 270, 13 Fed. Rep. 722, cited in the majority opinion, that no citizen can be deprived of his property without due process of law, and that the meeting of the board of equalization is a part of the legal process, when property is to be sold for taxes. But no citizen was ever deprived of his property by its being taxed. He is only deprived of it when it is sold. There is a wide distinction between a void tax and a void sale. Had the only defect in this case been the failure of the board of equalization to meet, as required by statute, the tax deed would have been none the less void, but, in my judgment, the tax deed holder would have been entitled to reimbursement under our statute. Modified.

CORLISS, C. J. (*concurring specially.*) In view of the importance of the questions involved, of the dissent upon one of the points discussed, and of the opinion in Bode v. Investment Co., 1 N. D. 121, 45 N. W. Rep. 197, in which I concurred, I deem it my duty to express my views in a separate opinion. Our safest guides are the landmarks of principle. The de-

cisions, it must be confessed, are in an unsatisfactory state. Falling back upon the very elements of the law, we find it is the undoubted constitutional right of the citizen to insist that at some step of the tax proceedings he shall be heard. This right to a hearing is fundamental and indestructable. Without it taxation is confiscation. The amount of the tax demanded of the citizen is an arbitrary exaction if he has had no legal right to be heard. It is true that the hearing, to constitute " due process of law," need not be the same in tax proceedings as in ordinary proceedings in courts of justice. Such a rule would cause intolerable delays. It cannot be doubted that our law providing for a hearing before the boards of equalization, and designating the time when such a hearing may be had, if desired, by the taxpayer, is not vulnerable to the constitutional objection that the property of the citizen is taken without " due process of law." Hagar v. Reclamation Dist., 111 U. S. 701, 4 Sup. Ct. Rep. 663; Davidson v. New Orleans, 96 U. S. 97; Trustees v. City of Davenport, 65 Iowa 633, 22 N. W. Rep. 904; Kelly v. City of Pittsburgh, 104 U. S. 78 ; Lent v. Tillson, 72 Cal. 404, 14 Pac. Rep. 71 ; Railroad Co. v. Commonwealth, 115 U. S. 321, 6 Sup. Ct. Rep, 57; State v. Tax Cases, 92 U. S. 575-610. But it is equally well settled, and it stands upon adamant, that there shall be a hearing of some kind before some person or body. Hagar v. Reclamation Dist., 111 U. S. 701, 4 Sup. Ct. Rep. 663; Stuart v. Palmer, 74 N. Y. 192; Thomas v. Gain, 35 Mich. 164; San Mateo v. Railroad Co., 13 Fed. Rep. 722-751; Santa Clara v. Railroad Co., 18 Fed. Rep. 385; Davidson v. New Orleans, 96 U. S. 97; Mulligan v. Smith, 59 Cal. 206; Kuntz v. Sumption, 117 Ind. 1, 19 N. E. Rep, 474; Railroad Co. v. Seneca Co. (Ohio), 1 West. Rep. 94; Trustees v. City of Davenport, 65 Iowa 633, 22 N. W. Rep. 904; Boorman v. City of Santa Barbara, 65 Cal. 313, 4 Pac. Rep. 31; Cooley, Taxation, 265-267 ; Investment Co. v. Parrish, 24 Fed. Rep. 197-204; Butler v. Supervisors, 26 Mich. 22; Hutson v. Protection Dist., Cal., 16 Pac. Rep. 549. Of course, if the tax is of such a nature that a hearing would be of no avail to the taxpayer—as taxes for licenses, etc.—no hearing need be provided for. Indeed, the grant of a hearing would be idle. The dis-

tinction between this class of taxation and taxation where values are to be determined is clearly stated in Hagar v. Reclamation Dist., 111 U. S. 701, 4 Sup. Ct. Rep. 663. Its importance in the examination of the authorities on this question of notice is so great as to justify a quotation of that part of the opinion in which it is expressed: "Of the different kinds of taxes which the state may impose there is a vast number of which, from their nature, no notice can be given to the taxpayer, nor would notice be of any possible advantage to him, such as poll taxes, license taxes (not dependent upon the extent of his business), and generally, specific taxes on things or persons or occupations. In such cases the legislature, in authorizing the tax, fixes its amount, and that is the end of the matter. If the tax be not paid, the property of the delinquent may be sold, and he be thus deprived of his property. Yet there can be no question that the proceeding is due process of law, as there is no inquiry into the weight of evidence or other element of a judicial nature, and nothing could be changed by hearing the taxpayer. No right of his is therefore invaded. Thus, if the tax on animals be a fixed sum per head, or on articles a fixed sum per yard or bushel or gallon, there is nothing the owner can do which can affect the amount to be collected from him. So, if a person wishes a license to do business of a particular kind or at a particular place, such as keeping a hotel or restaurant, or selling liquors, cigars or clothes, he has only to pay the amount required by the law and go into the business. There is no need in such cases for notice or hearing. So, also, if taxes are imposed in the shape of licenses for privileges, such as those on foreign corporations for doing business in the state, or on domestic corporations for franchises, if the parties desire the privilege, they have only to pay the amount required. In such cases there is no necessity for notice or hearing. The amount of the tax would not be changed by it. But where a tax is levied on property, not specifically, but according to its value, to be ascertained by assessors appointed for that purpose, upon such evidence as they may obtain, a different principle comes in. The officers, in estimating the value, act judicially, and in most of the states provision is made for the correction of errors

committed by them through boards of review or equalization, sitting at designated periods provided by law, to hear complaints respecting the justice of the assessments. The law, in prescribing the time when such complaints will be heard, gives all the notice required; and the proceeding by which the valuation is determined, though it may be followed, if the tax be not paid, by a sale of the delinquent's property, is due process of law." See, also, as stating this distinction, Santa Clara Co. v. Railroad Co., 18 Fed. Rep. 409, and Scott v. Toledo, 36 Fed. Rep. 385. This distinction renders sound the language of Justice Miller in McMillen v. Anderson, 95 U. S. 37, in which there is an intimation that no notice or hearing of any kind is necessary in case of a licensed tax. But the decision in that case stands upon the ground that the taxpayer had a right under the statute to contest the validity of the tax in a court of justice, and enjoin its enforcement. There can be no room for doubt as to the right of the citizen to a hearing where his share of the public burden is not a fixed sum, but depends upon the ratio which the value of his property bears to the value of all the assessed property within the taxing district. Deny him this right, and caprice, prejudice, or malice will hold unchecked· sway in the adjustment and apportionment of this burden.

Did the failure of the board of equalization to meet at the time prescibed by law destroy the tax? Where there is a legal tax, mere irregularities will not justify the tax payer in enjoining the enforcement of the tax, or in appealing to equity for relief from the cloud overshadowing or threatening to overspread his title, unless he pay this lawful tax grounded upon the compliance with the law in those provisions which are matters of substance. But at the threshold looms up the inquiry, is there a legal tax? Our statute, in place of payment or tender requires the court to render judgment for the tax. Bode v. Investment Co., 1 N. D. 121, 45 N. W. Rep. 197; § 1643, Comp. Laws. This, however, does not obviate the necessity of this preliminary interrogatory. There must be a legal tax. A tax, without a lawful levy or a lawful assessment is an impossibilty. To say that the court must render judgment for a tax which has no legal existence is worse than nonsense. There seems to be

somewhat of a disposition on the part of some of the courts to entertain loose notions touching the question whether there is a legal tax to be paid or tendered as a condition precedent to relief in equity. Where the legislature has prescribed certain proceedings as preliminary to a valid assessment and a valid levy, the citizen, so far as they affect his constitutional rights at least, has a valuable interest in them. If these steps are disregarded, I am at a loss to know on what principle the court will indulge the presumption that what is in mere legal effect a mere arbitrary exaction is exactly commensurate with the debt the citizen owes to the public. If there was no consummated legal assessment in this case then there is no tax for which judgment should be rendered. Is it essential to the validity of an assessment that the statutory opportunity for a hearing should have been accorded to the taxpayer? On principle I am clear that it is. Until such an opportunity is given, the tax proceedings, as to the assessment, are in their incipiency. Preliminary steps have been taken to make a valid assessment, but they have not been consummated. The sovereign, through its agent, the assessor, has apprised the citizen by the assessment and its proper return to the proper office that in the apportionment of the levy his property will be valued at a certain sum. So far he has had no hearing. The law provides for this at a later date. Is the arbitrary valuation of the assessor, without the chance of contesting its accuracy, a complete assessment? If so, then the allegation of the plaintiff is a final judgment against the defendant without any hearing or opportunity to to be heard. The assessment is no more than the statement of the case of the public against the citizen as to the valuation of his property as the basis of taxation. Final judgment can be pronounced—the assessment can be regarded as final and complete—only after an opportunity for hearing has been accorded. Then, and only then, is there a legal assessment. In the interim the proceedings with respect to the assessment are unfinished. The doctrine that the taxpayer must either tender or pay or must aver that the tax is unjust, although the right to a hearing has been denied by the failure of the proper board to assemble at the proper time and place for that purpose, is sub-

versive of the statute, and takes from the citizen his constitutional right to a hearing in the very tribunal which the legislature has prescribed. The right to be heard in the tribunal so designated is as much a part of his constitutional right as the right to be heard at all. It is the only tribunal in which the hearing can be lawfully had. The legislature with full and exclusive authority over the subject (no constitutional right being violated), have constituted it for that express purpose, to the exclusion of all other tribunals. If the citizen has no constitutional right to be heard there he has no constitutional right to be heard at all. But equity assumes that this arbitrary exaction is just, and literally forces the tax payer to litigate its justice in a different tribunal, taking from him the constitutional right to contest it before the only body to which the legislature has delegated such power, and casting upon him the burden of showing that this arbitrary valuation is unfair. If he will not litigate it there, he must pay or tender the pretended tax, or under a statute like ours, judgment for this pretended tax will be rendered, or he must submit for all time to have the market value of his property impaired by a cloud upon his title. It seems to my mind anomalous to treat in equity the fiat of the assessor as everything in the constitution of a legal assessment and the right to be heard as nothing. The essence of a just and lawful assessment is not a mere valuation of property, but a valuation which has or could have been subjected to examination before a tribunal or officer upon due notice to the taxpayer. If the law had failed to provide any hearing no one would seriously urge the legality of the tax, even in equity. But it cannot matter how this constitutional right is invaded. The opportunity for a hearing is as effectually denied when the proper tribunal fails to assemble as when there is no provision in the law for a hearing.

There is nothing in the suggestion that the plaintiff should have shown that he made an attempt to be heard. The law does not require that the citizen should perform an idle ceremony to protect a constitutional right. His appearance where and when the board should have assembled would not have secured him a hearing. He was as effectually debarred of a

hearing as if the law had provided for none.    Where there is
no legal right to be heard under the law there is a conclusive
presumption that the assessment is unjust.    The law stigma-
tizes as arbitrary every such proceeding.    But not only is this
presumption not conclusive where the proper tribunal denies a
hearing, but there is no such presumption at all.    On the con-
trary, the pendulum has swung almost as far to the other side.
The presumption is now in favor of the justice of this arbitrary
assessment.    Why, no one can explain, or even discover.    The
language of Judge Cooley in his great treatise on Taxation is
very applicable in view of this claim that the taxpayer must liti-
gate the question of the justice of the assessment in a tribunal dif-
ferent from the one which the law has constituted for that express
purpose: "All these provisions being of vital importance to the
taxpayer, must be regarded as compulsory, and a compliance
with them as conditions precedent to any further step to charge
him with a tax.    When they fix a certain time for the meeting
of a board of review and the board fails to meet, or a certain
time for the return and filing of the assessment for inspection
before the meeting of the board, and it is not filed, whereby op-
portunity for inspection is lost, the tax proceedings must be re-
garded as having failed to become effectual, because of the fail-
ure of the officers properly to follow them up, as required
by law.    No argument can be admissible, in such a case, which
proposes the acceptance of something else as a substitute for
the securities the statute has provided.    To substitute anything
would require legislation, and even legislation for that purpose
would be of doubtful validity if it failed to provide what would
fully accomplish the same purpose.    Such regulations for the
protection of individual rights are reasonable and they are de-
manded by justice and general convenience.    On general prin-
ciple they must be regarded as mandatory and a strict observ-
ance of their provisions held to be essential."    Cooley, Tax'n,
p. 267.

The language of the court in the Railroad Tax Cases, 13 Fed.
Rep. 722-750, is very pertinent, and it is also a complete an-
swer to the possible suggestion that the fact the taxpayer is
required to furnish the assessor a list of his property consti-

tutes a hearing in the constitutional sense. "The presentation to the state board by the corporation of a statement of its property and of its value, which it is required to furnish, is not equivalent to a notice of the assessment made, and of an opportunity to be heard thereon. It is a preliminary proceeding, and until the assessment the corporation cannot know whether it will have good cause of complaint. No hearing upon the statement presented is allowed and when the assessment is made the matter is closed. No opportunity to correct any errors committed is provided. The presentation of the statement can no more supersede the necessity of allowing a subsequent hearing of the owners than the filing of a complaint in court can dispense with the right of the suitor and his contestant to be heard thereon. There being, then, no provision of law giving to the company notice of the action of the state board and an opportunity to be heard respecting it, is the assessment valid? Would the taking of the company's property in the enforcement of the tax levied according to the assessment be depriving it of its property without due process of law? It seems to us that there can be but one answer to these questions. There is something repugnant to all notions of justice in the doctrine that any board of men can be clothed with the power of finally determining the value of another's property, according to which it may be taxed, without offering to him an opportunity of being heard respecting the correctness of their action. * * * We cannot assent to any such doctrine. It conflicts with the great principle which lies at the foundation of all just government— that no one shall be deprived of his life, his liberty or his property without an opportunity of being heard against the proceeding."

This opinion so far has not taken notice of the fact that the board did not fail to meet at all, but only failed to meet at the time prescribed by statute. The board is required to begin its session on the first Monday of July in each year, and to hold a session of not less than two days. Comp. Laws, § 1584. The board did not meet on the first Monday, nor did it assemble on the first Tuesday. It failed to organize until the 8th of July. I can see no difference, so far as the question of "due process

of law" is concerned, whether there is a failure to meet at the time fixed by law or an omission to meet at all. It must not be lost sight of in this discussion that a mere opportunity for a hearing is not sufficient to constitute "due process of law.'' There must be legal notice of such opportunity for a hearing. It would be mockery to assert that the citizen had been protected because there had been afforded a general opportunity for a hearing, of which he had no legal notice. "It is not customary to provide that the taxpayer shall be heard before assessment is made, but a hearing is given afterwards, either before the assessors themselves or before some court or board of review; and of the meeting of that court or board the taxpayer must in some manner be informed, either by personal notice, which is reasonably certain to reach him, or—which is equivalent—by some general law which fixes the time and place of meeting, and of which he must take notice. Said Justice Field in the Railroad Tax Cases, 13 Fed. Rep. 722-751: "Notice is absolutely essential to the validity of the proceedings in any case. It may be given by personal citation, and in some cases it may be given by statute; but given it must be in some form." All the adjudications speak the same language. It is undoubtedly well settled that when the statute, as in this state, fixes the time of the hearing, every citizen is deemed to have sufficient notice of that fact to constitute the proceedings "due process of law" if the opportunity for hearing is not denied. In the Railroad Tax Cases the court said: "Notice to him will be deemed sufficient if the time and place of hearing be designated by statute." And in Hagar v. Reclamation Dist., 111 U. S. 701, 4 Sup. Ct. Rep. 663, the court observed "that the law in prescribing the time when such complaints will be heard gives all the notice required." See, also, Railroad Co. v. Washington Co., 3 Neb. 30-42; Black, Tax Titles, § 30; Cooley, Taxation, p. 266. But what notice had the plaintiff of this late meeting of the board of equalization? He had no personal notice; nor would that, in my judgment, have been sufficient, for the only notice which the law recognizes as legal is that which the law itself prescribes. Certainly he has no notice by virtue of the statute, for that informed him that the board would meet upon only

two days—*i. e.*, the first Monday and the first Tuesday of July—unless its session was continued by adjournment. It distinctly informed him that the board would not meet for the first time to his surprise and disadvantage at some future day. If it did not so inform him, then he must be on the alert for an indefinite time, momentarily expecting the board to assemble without authority of law and in direct defiance of its mandates. This is true of the rest of the community. A doctrine which would keep the people constantly on the watch at the place where the meeting is required to be held, with the danger of losing a hearing if they should for a moment slack their vigilance, would be intolerable. The principle which underlies the decision in Kuntz v. Sumption, 117 Ind. 1, 19 N. E. Rep. 474, is controlling. That principle is that the citizen has no notice that the board of equalization will act without the line of their authority. The board in that case increased the amount of an assessment. Their action was held to be without jurisdiction, for the reason that the law provided for no notice to the taxpayer, no notice of such action, and that the fact that he may have been notified and may have appeared before the board was entirely immaterial. The law is to be tested by what the citizen may of right demand under its provisions. Said the court : " The statute does not provide for notice to taxpayers whose taxes it is proposed to increase; and this infirmity destroys it in so far as it affects such citizens. It is not enough that in fact the taxpayer does have some notice or information, for the law must provide for notice, or else no legal notice can be given. A man may be subpœnaed as a witness in an action pending against him, but, unless he is summoned or notified as a party under some law authorizing a summons or a notice, the proceedings are utterly void. A man may be served with a written notice that a petition for a ditch is pending; but if there is no law authorizing notice it will be unavailing. A notice not authorized by law is, in legal contemplation, no notice." See, also, Stuart v. Palmer, 74 N. Y. 188. The opportunity for a hearing which the law gave, and of which plaintiff had legal notice, was never afforded to him by the board. The alleged opportunity for a hearing was one of which he had no legal or

actual notice; and, as the law provided for no notice of such a belated opportunity for a hearing, actual notice would not have made it his duty to be present at a pretended meeting of the board when it had no power to organize as a board of equalization. Even assuming actual notice, and that this would be sufficient, yet there was no opportunity for hearing, because the board of equalization never met at all. It assumed to meet at a time when its powers to initiate a session had expired. To hold that the provision of the law as to the time when the board should assemble to hear complaints is merely directory strikes at the very substance of the citizen's constitutional right to a hearing. He is denied a hearing if the board at its own pleasure or caprice may assemble at any other time without notice of its meeting, for to require him and all other citizens to dance daily attendance at the place fixed by law for the meeting, until, after the lapse of a month or two, the board should see fit to convene, would be a doctrine grotesque in its absurdity, monstrous in its injustice, and subversive alike of the spirit and of the letter of the law.

As has been before stated, a loose notion appears to prevail in some jurisdictions upon this subject of the validity of a tax in equity. It cannot be doubted that where there is a valid tax no mere irregularities in subsequent procedure will destroy it, and of course equity should insist upon or demand its payment where the citizen appeals to equity for relief. But there must be a valid tax. Equity has no power to levy a tax or make an assessment, and there is no other than the statutory procedure recognized by the law by which the share of the public burden to be borne by any citizen can be determined. It is illogical for a court of equity to decree the payment of what it terms the suitor's fair proportion of the taxes to be collected, where the proceedings by which alone that fair share can be determined are defective in those statutory requirements in which are bound up the constitutional rights of the citizen. There can be no tax in law or in equity where there are omissions of such a nature in the proceedings to create a tax, if the constitution is to continue to shield the citizen in the enjoyment of his property against arbitrary exactions under the

guise of taxation. In this age of vast encroachments upon what had long been regarded as the domain of constitutional right, it is well to uphold and enforce the guaranties of the fundamental law in the full vigor of their manifest spirit. It has been urged that this ruling will extensively affect and impede the collection of taxes throughout the state. The answer is that we cannot make laws and we dare not fritter away the sacred rights of the citizen because of an exigency. Legal principles cannot be put aside, constitutional rights must not be impaired because public officials have neglected to follow the law in those particulars affecting the substantial rights of the citizen. We dare not make a fissure in the dike, however small, to meet an exigency, however great, lest the opening in time widen to an enormous breach, and constitutional rights be overwhelmed, confounded and swept away. And here it is well to answer the argument that the rights of the public should not be at the mercy of the board of equalization. This argument, when legitimately extended would warrant the taking of property and life, without due process of law. It would uphold an assessment never made, a tax never levied, because it is in the power of the officers charged with the performance of these duties, wholly to neglect them. The truth is, that, in this sense, the public is constantly at the mercy of its servants in a multitude of cases. Protection to human life is in this sense at the mercy of courts, of jurors, and of prosecuting attorneys. Failure of duty on their part might encourage and enormously increase the number of homicides; but who would urge this as a legal reason why the accused should be condemned and executed without a trial. Omission of duty is not the equivalent of its full discharge where the citizen can point to the constitution as a guaranty that that duty shall be performed before his property shall be taken. But the people are not at the mercy of their servants. Experience has shown that the sanction of the criminal law, the force of public opinion and the general disposition of men to obey the law and discharge their duties are sufficient protection against the evils of official dereliction of duty. How stands the question upon authority? The case of Mills v. Gleason, 11 Wis. 493, is cited. The opinion shows that it does not sustain the

position that the failure of the board of equalization to meet is of no moment in equity unless the citizen avers the injustice of the tax. The court said: "It is also objected that the assessors did not meet for the purpose of hearing objections as required by the charter. We are unable to say from the evidence that this objection is true in point of fact. It appears from the evidence on both sides that the assessors did meet and the most that can be said is that it does not appear that they were all present at any one time. We shall not determine what would be the effect of an entire omission of this meeting by the assessors." In the case of Land Company v. City of Crete, 11 Neb. 344, 7 N. W. Rep. 859, the opinion merely states the conclusion of the court on this point without any attempt to justify that conclusion by reasoning or fortify it by authority. The case of Cowell v. Doub, 12 Cal. 273, is not in point. The assessment was, after it had been irregularly made, confirmed by an act of the legislature; and it was of the hearing accorded to the taxpayer by this act of which it was insisted he did not have the statutory notice. But there was nothing in the case to show that the original assessment, before it was confirmed, was not sufficiently legal to sustain a tax in equity. There was nothing to warrant the conclusion that a full opportunity for a hearing had not been accorded the taxpayer under the original proceedings. The irregularities may, for aught the report of the case discloses, have been in matters which do not affect the substantial rights of the citizen. Surely, if the tax was so valid before the passage of the confirming act that it could not be assailed in equity without payment or tender, the enactment of that statute did not detract from such validity. Mining Co. v. Auditor General, 37 Mich. 391, is not directly in point. The court expressly held that the taxpayer was not deprived of a hearing. The facts and an extract from the opinion will show this conclusively. The assessment was made by a supervisor of a township in the year 1874. In making the assessment he took the original assessment roll for the year 1873, and made in it certain changes of valuation. This was all done before the time he was required to have his roll ready for review. No other changes, with a single trifling exception, not in any man-

ner affecting the rights of the taxpayers, were made after the time fixed for a review of the assessment roll. After this time had expired, the supervisor then made up the formal assessment roll, which was an exact copy of the roll of 1873 as changed prior to the day fixed by law for review, with the unimportant exception referred to. Said the court at page 393: "For all the purposes of this review parties whose property was assessed could at the time fixed obtain as full and accurate information from the assessment roll of 1873, as altered, as they could had a copy of the same been made and then altered, or an entirely new assessment been made, without any reference whatever to the roll of 1873. The roll as changed and as exhibited at that time no longer stood for the roll of 1873 for that purpose, and as it then stood it was the roll for 1874; and the fact that it became necessary after the supervisor had reviewed and completed this roll, for him to make a literal copy thereof, to which his certificate should be attached, and which should afterwards be examined by the board of supervisors, equalized and certified to by their chairman, and which should thereafter be and remain the original roll for 1874, would not, in my opinion render such roll or the taxes afterwards assessed upon the basis thereof, illegal and void. It may frequently become necessary, on account of the imperfect manner in which the assessment is first made and the changes and corrections made during the review thereof, that a new roll or copy should be made and used thereafter as the original roll, and I should hesitate to hold, where such a necessity existed in the opinion of the supervisor, and a legible and correct copy thereof had been made and adopted and used thereafter as the assessment roll, that third parties, with no other foundation to stand upon, could with the aid of a court of equity, escape the payment of their just proportion of the public burdens." It is apparent that the court considered that the taxpayer was not deprived of his hearing; that there was exhibited to him on the day for review the assessment against him as it was afterwards transcribed; and that he could have had no greater opportunity to challenge its accuracy had it been transcribed before the day fixed for review. In Burt v.

Auditor General, 39 Mich. 126, the substantial rights of the taxpayer were not at all involved.    There was no pretense that the board of equalization did not assemble at the proper time. The only defects were the failure of the board of review to attach the proper certificate and the omission of the president of the board to sign the certificate of equalization.    The case of Frost v. Flick, 1 Dak. 131, 46 N. W. Rep. 508, it is true, was cited in the prevailing opinion in Bode v. Investment Co., 1 N. D. 121, 45 N. W. Rep. 197, but this particular point was not then involved and the writer feels free to express his dissent from that case in so far as by its reasoning and its conclusion it conflicts with the views here expressed.    The whole trend of the opinion seems to be that the general duty of the citizen to pay some taxes warrants a court of equity in presuming an apportionment based upon an arbitrary assessment—for any assessment is arbitrary where the right to a reasonable hearing on reasonable notice is denied—represents his fair share of the taxes to be paid.    But there is no mode of ascertaining that share except the statutory mode; and if in the assessment of his property he has no hearing, there is nothing to prevent such a disproportionate assessment against him as will ultimately result in a confiscation of his entire estate.    What, then, becomes of the constitutional guarantee of equality in taxation? His duty is not to pay all the taxes, or to pay a penny more than his just share in view of the value of his property in connection with the value of all the property assessed.    The statute has prescribed an exclusive mode of procedure by which that share shall be ascertained.    There shall be notice and a hearing.    These are the sacred and inalienable rights of the humblest.    On what principle does any court build up a presumption that this fair share has been ascertained upon a denial of these rights which are the only safe guaranty that the assessment will be just?    The presumption that any officer will do his duty cannot be allowed to obtain in such a case.    This would render presumptively valid an assessment where there was no hearing provided for by the law a palpable absurdity. The decision of the Nebraska supreme court in Railroad Co. v. Washington Co., 3 Neb. 30-42, is more satisfactory than the

naked statement of a conclusion in the case reported in 11 Neb., already referred to. It is true that the proceeding was not in equity, but the language of the court shows that the failure of the board of equalization to meet at the time prescribed by law is fatal to the tax in equity as well as in law. "The time of meeting is definitely fixed by statute, and it seems clear that it was the intention of the law-givers that this time fixed by statute, should operate as notice to all persons who might feel aggrieved. Therefore, this provision of the statute cannot be regarded as directory merely or simply as a matter of form, but as a matter of substance."

On the question of description, I concur in the majority opinion; and in answer to the statement in the petition for a rehearing, that the description adopted is the customary one, I would reply that 2 is not $\frac{1}{2}$, nor 4 $\frac{1}{4}$, and no usage should be allowed to change their significance. It would be as reasonable to give effect to a custom that the points of the compass should in such cases be represented by certain figures respectively.