MAGNUSSON v. KAUFMAN, Jr., et al.

No. 7388.

Supreme Court of North Dakota.

July 1, 1954.

Cox, Cox, Pearce & Engebretson, Bismarck, for defendants and appellants.

E. J. McIlraith, Minot, for plaintiff and respondent.

BURKE, Judge.

This is an action to cancel a mineral deed executed and delivered by the plaintiff to the defendants Kaufman and Gay. Plaintiff alleged in his complaint that he was induced to execute the mineral deed by the fraud of an agent of Kaufman and Gay and that the description of the land contained in the mineral deed was so uncertain and indefinite that it rendered the deed void. The defendants, Kaufman and Gay in their answer denied the alleged fraud. The defendant, United States Smelting, Refining and Mining Company, in its separate answer alleged that it was a bona fide purchaser from Kaufman and Gay of certain mineral interests in the land. The trial court found in favor of the plaintiff upon all issues and judgment was entered decreeing that the mineral deed in controversy was void and that the United States Smelting, Refining and Mining Company was not a bona fide purchaser.

The defendants have appealed and have demanded a trial de novo in this court.

The plaintiff is a retired farmer, who at the time of the transaction at issue here was seventy years of age. He had come to the United States from Sweden when he was twenty-one years old. He had six years formal education in Sweden but was entirely unfamiliar with the English language when he arrived in this country. For two or three years he worked as a farm hand for Swedish speaking families in Minnesota and in 1906, he filed on a homestead in Di-

vide County in this state. He farmed this land and during the succeeding years he acquired three additional quarter sections of land by purchase. He never married. He has learned to speak English, but speaks with a Swedish accent. His ability to read English is very limited. The defendants, Kaufman and Gay, were copartners engaged in business at Minot as brokers of oil and gas leases and other mineral interests.

On October 26, 1950, one Robert Stenberg, an agent of Kaufman and Gay, purchased from the plaintiff an oil and gas lease of all the plaintiff's land and a mineral deed, which granted to Kaufman and Gay an undivided one half interest in the minerals (with certain stated exceptions) underlying such land.

Before stating the circumstances upon which plaintiff predicates fraud, we think it best to dispose of the plaintiff's challenge to the sufficiency of the description of the land contained in the mineral deed. This description is as follows:

"Township 161 North, Range 98 West. Section 30: SW/4

Township 161 North, Range 99 West. Section 23: S/2SW/4 and Lot 2
Section 25: SW/4SW/4
Section 26: SE/4SE/4 and NW/4 and Lot 4
Section 35: E/2NE/4"

Plaintiff's contention is that the use of such abbreviations as S/2 or SW/4 makes the description unintelligible; that from such description it is impossible to tell what land the parties intended to describe and that therefore the deed is wholly ineffective as a conveyance. In support of this contention, plaintiff relies upon the decisions of this court in Power v. Larabee, 2 N.D. 141, 49 N.W. 724 and Power v. Bowdle, 3 N.D. 107, 54 N.W. 404, 21 L.R.A. 328, 44 Am.St.Rep. 511. In these two cases this court held that an abbreviation such as NW/4 was insufficient to describe a fractional part of a section. Both of these cases relate to descriptions used in tax and tax title proceedings. Later this court in

Beggs v. Paine, 15 N.D. 436, 109 N.W. 322, 325, held that the abbreviation N.W. in a column headed "'Part of Section'" was sufficient to identify the land as the northwest quarter of the section. In doing so, they referred to Power v. Larabee and Power v. Bowdle, supra, and stated "We are not disposed to extend the ruling in those cases to cases not within the express terms of those decisions." Subsequently in 1915, the Legislative Assembly enacted Section 57-0202, NDRC 1943, which specifically permits the use of such abbreviations in tax and tax title proceedings, and provides (subsection 5) that when initial letters such as NW or SW shall be followed by the numeral 4 placed on or above the line, the description shall be taken to mean the northwest quarter or the southwest quarter. Thus the legislature has removed any doubt as to the meaning of such abbreviations. They are now clothed with legal certainty. There can be no merit to a contention that a description which is legally sufficient in a tax deed or upon the assessment lists is insufficient in a deed between private parties. The test is whether the description identifies the property. 26 C.J.S., Deeds, § 30, page 210. Presumptively, at least, the parties to a deed would intend abbreviations in title descriptions to have the same meanings that the law gives to those abbreviations when they appear upon the county records.

The next question is whether plaintiff was induced to execute the mineral deed by fraud.

There is some dispute concerning the circumstances leading to the signing of deed. Plaintiff's version of the facts is that Stenberg asked if he could buy an oil and gas lease and offered a rental of ten cents an acre; that when plaintiff appeared reluctant to execute a lease, Stenberg said, "Come into the house, I give you two hundred dollars;" that plaintiff understood he had been offered the two hundred dollars additional for executing a lease; that the words "deed" or "mineral deed" were not mentioned. On cross-examination plaintiff stated, "He said I was going to get $64, and when we had, before we drew up the papers,

he said 'I give you $200'. So that's what I thought, so the deal should go through." He was then asked, "Well now, regardless of what you thought, Mr. Magnusson, what did he (Stenberg) say?" Plaintiff answered, "He didn't say anything." Plaintiff stated that during the time Stenberg was preparing the instruments, he explained some of the provisions of the lease but did not mention the deed. Stenberg stated that he offered the two hundred dollars to plaintiff for half of his minerals and that he read to the plaintiff parts of the mineral deed. There is no question but that Stenberg typed out the lease and mineral deed in the presence of the plaintiff. They were presented to him separately for signature. The mineral deed was entitled "Mineral Deed" in bold face capital letters one half inch high. Stenberg delivered copies of both instruments to the plaintiff at the time of signing and gave him two checks, one for sixty-four dollars and one for two hundred dollars. After Stenberg had left plaintiff's home, plaintiff examined the copies of the instruments that had been left with him, he saw the word "Deed" on the mineral deed and immediately became concerned over what he had done. The next morning he went to town for the purpose of getting his papers back. He was unable to find either Stenberg or Spelhaug. He did see Mrs. Spelhaug and told her he wanted the papers back. He then went to the state's attorney's office and left his copies of the instruments and the checks with him. Plaintiff has never cashed either of the checks given to him by Stenberg.

There is thus a direct conflict between the testimony of the plaintiff and the testimony of Stenberg. The plaintiff says that Stenberg never mentioned mineral deed and that he understood that the two hundred dollar check was something in the nature of a bonus for signing the oil and gas lease. Stenberg says he did offer the plaintiff two hundred dollars for half of his minerals. While plaintiff says he understood the two hundred dollar check was a bonus for signing the lease he does not say how he arrived at that understanding. He does not say that Stenberg told him that that was what

this check was for. In fact he stated that Stenberg said nothing about what the two hundred dollars was for and said nothing about the fact that he asked plaintiff to sign two instruments. Some of plaintiff's testimony demonstrates that he was mistaken in saying that a sale of mineral interests was not discussed. The following is part of his cross-examination:

"Q. Did Mr. Spelhaug say anything about his land, that the Federal Land Bank had half the minerals on it? A. Yeah, he was mentioning that.

"Q. What did he say about that? A. Well, he don't say anything. He said only that he just, he just got half of it because the Federal Land Bank has the half.

"Q. Now, what did you understand Mr. Spelhaug to be talking about when he said that? A. I understand—I didn't understand more than he was saying like he was, that it was nothing wrong to make a lease because he had done it."

Whatever the plaintiff may have understood, it is perfectly clear that what Mr. Spelhaug was talking about was a mineral interest in real estate other than a lease. It is also clear that the suggestion Mr. Spelhaug was making, was not a suggestion that it would be proper for plaintiff to lease his lands as plaintiff says he understood it, but that it would be proper for him to sell half of his minerals. The language is not subject to the construction which plaintiff claims he gave it. Neither Mr. Stenberg nor Mr. Spelhaug nor anyone with a rudimentary knowledge of the terminology used in transactions involving oil and gas leases, and the sales of mineral interests would so construe it. The remark made by Spelhaug would not be pertinent to a discussion concerning a lease but would be very pertinent to a discussion of a sale of a mineral interest. We are therefore compelled to a conclusion that it was a sale of a mineral interest in land that was under discussion at the time the remark was made.

It is possible that plaintiff may not have understood what the subject under discussion was, but there is nothing in the record

that indicates that Stenberg was or should have been aware of that fact.

Furthermore, the fact that Stenberg used a blank form, which was clearly labeled "Mineral Deed"; that he presented the lease and mineral deed for signing separately; that he gave two checks and copies of both instruments to plaintiff are all indications that he was acting in good faith.

We are satisfied therefore that the record in this case does not establish misrepresentation, concealment or fraud of any kind upon the part of the agent for the defendants, Kaufman and Gay.

The judgment of the District Court must therefore be reversed and the action dismissed.

MORRIS, C. J., and GRIMSON and SATHRE, JJ., concur.

JOHNSON, J., did not participate.