(88 N. W. Rep. 88.)

---

PETER PICKTON *vs.* CITY OF FARGO, *et al.*

Opinion filed Nov. 1, 1901.

**Municipal Improvements—Illegal Assessment.**

Construing the provisions of chapter 41, Laws 1897, as amended by chapter 42, Laws 1899: The city engineer of the city of Fargo on April 24, 1899, filed with the city auditor of said city a document embracing an estimate for a special assessment for a tax to cover the cost of paving and other improvements upon certain streets and avenues of said city lying within a district of the city denominated "Improvement District No. 2," in which district the plaintiff owned a certain lot, which is described in the complaint. The city officials of said city in the year 1899, basing their action upon said estimate of the city engineer, and acting and claiming to act under § 7 of the original act, as embraced in said chapter 41, Laws 1897, attempted to assess a special tax upon the several lots and parcels of land situated in said improvement district No. 2, including a tax upon the plaintiff's lot. *Held,* that said attempted assessment was illegal and void, for the reason that § 7 of the original act of 1897 had been repealed long prior to the date of the filing of the engineer's estimate for said assessment, and on March 1, 1899, and that such repeal operated to sweep away all power and authority of any city engineer with respect to any such tax, or estimate therefor, which existed under § 7 of the original enactment. ·

**Assessment Void.**

*Held,* further, for reasons set out in the opinion, that the attempted assessment of the city officials in 1899 would have been illegal and void if the amendment which took effect on March 1, 1899, had never been enacted.

**Contractors' Warrants Not Impaired by Amendment of Statute.**

The city council authorized said improvements to be constructed in the year 1898, and on September 20th of that year a contract in writing was entered into between the city and one J. K. whereby the latter agreed to construct the improvements upon terms stated in the contract. Before the commencement of this action said contractor had received under said contract, of the bonds and warrants of said city, an aggregate of $14,449.15. *Held,* that the amendment of the

original act, as embraced in chapter 42, Laws 1899, did not so operate as to impair the rights of said contractor, nor to impair the validity of said warrants and bonds.

### Statute Directory—"Forthwith" Construed.

The word "forthwith," found in the first line of § 7 of the amended act, construed, and *held* to be directory merely, and, further, that there was no legal impediment to prevent the city officials from assessing a tax in 1899 under the terms of the amended act, which took effect on March 1st of that year.

### Curative Act—Effect.

The curative provisions of § 17 of the act of 1897 considered, and *held* that said section has no application to the facts of this case, inasmuch as the city officials did not attempt to either assess or levy any special tax under the only law then in force authorizing them to make such an assessment. This record presents a case of total failure to act under the law, and does not present a case of merely irregular action.

### Action by Taxpayer—Injury Presumed.

*Held*, further, that, under the rule established in this jurisdiction, "substantial injury" and prejudice to the suitor will be presumed, without special evidence being offered for that purpose, in all cases where the taxing authorities attempt to levy or assess a tax either in the absence of legal authority to do so, or where there are substantial errors or omissions of duty on the part of the officials which are fundamental to the tax.

### Statute as to Passage of Ordinance—Mandatory.

Section 2143, Rev. Codes 1899, construed, and *held* that the provision requiring that on the passage of all ordinances the yeas and nays shall be called and entered upon the journal of the proceedings of the city council is mandatory, and not discretionary.

### Purpose of Requiring Yeas and Nays.

*Held*, further, that the purpose of this requirement is to fix individual responsibility upon members of the council, and to do so, it is essential that the journal entries shall show not only the number of votes cast, and the fact that the yeas and nays were called, but likewise the names of the members voting upon the passage of the ordinance, and how each voted—whether yea or nay.

### Minutes of Council Must Show Compliance with Statute.

*Held*, further, that the fact that certain members of the council who are named in the journal entries were present when the council meeting assembled, and answered to their names on roll call, will not warrant the presumption that such members remained until a given ordinance was put upon its passage, and voted thereon.

### Parol Evidence Inadmissible to Supply Omissions.

*Held*, further, that oral evidence is inadmissible, either in lieu of the journal entries, or to supply omissions in the same.

### Journal Must Show How Each Member Voted.

*Held*, further, that where, as in this case, the journal entries of the proceedings show only that upon the passage of an ordinance the yeas and nays were called, and a certain number of votes—a majority

of the council—were cast, but omit to show the names of members voting, or how each voted, such entries are insufficient to establish the fact that the ordinance was adopted by the city council.

Appeal from District Court, Cass County; *Pollock, J.*

Action by Peter Pickton aainst the city of Fargo and others. Judgment for defendants, and plaintiff appeals. Reversed.

*Turner & Lee,* for appellant.

There is no valid ordinance creating the Improvement District, for the reason that no record of the yeas and nays was made upon the vote of the council on the passage thereof. *Steckert* v. *East Saginaw,* 22 Mich. 104; *Sprangler* v. *Jacoby,* 14 Ill. 297; *Supervisors* v. *Peoples,* 25 Ill. 183; Dillon's Mun. Corp. (2 Ed.) § 2̄9; 15 A. & E. Enc. L. 1036; *McCormick* v. *Bay City,* 23 Mich. 457; *Morrison* v. *Lawrence,* 98 Mass. 219; *Brophy* v. *Hyatt,* 15 Pac. Rep. 399; Tiedeman Mun. Corp. 98; *Commissioners* v. *Snuggs,* 39 L. R. A. 439; *Union Bank* v. *Commissioners,* 34 L. R. A. 487; *Preston* v. *Cedar Rapids,* 63 N. W. Rep. 577; *Sullivan* v. *Leadville,* 18 Pac. Rep. 736; *O'Neil* v. *Tyler,* 3 N. D. 47. No ordinance was passed providing for the details necessary to the full exercise of the power granted to the council to pave, curb and grade. Ch. 102, Subd. 7, Laws 1897; § § 2148, 2333, Rev. Codes; *Engstad* v. *Dinnie,* 8 N. D. 1. The resolution passed by the council directs the engineer to prepare plans, declares the improvement necessary and authorizes the advertising for bids and the letting of the contract; but the record is silent as to the entire matter of details of grade, material, etc. For this reason the assessment is void. § 2279, Rev. Codes; *Engstad* v. *Dinnie,* 8 N. D. 1, 76 N. W. Rep. 292; *Sterling* v. *Galt,* 7 N. W. Rep. 471; *McLaurin* v. *Grand Forks,* 6 Dak. 397, 43 N. W. Rep. 710; *McCrowell* v. *Bristol,* 20 L. R. A. 653; *Mason* v. *Sioux Falls,* 2 S. D. 640, 51 N. W. Rep. 770; Dillon Mun. Corp. § § 91-98. Not only was there no ordinance covering the details of the improvement, but the whole matter of details was delegated absolutely to the City Engineer. This is a delegation of legislative and discretionary power, and illegal. Dillon Mun. Corp. § 96; *McCrowell* v. *Bristol,* 20 L. R. A. 653 & note; *Hydes* v. *Joyes,* 96 Am. Dec. 311; *Thompson* v. *Schemerhorn,* 55 Am. Dec. 385; *Bolton* v. *Gilleran,* 38 Pac. Rep. 881; *San Jose Imp. Co.* v. *Auzerais,* 39 Pac. Rep. 859; *Schwieson* v. *Mahon,* 6 Pac. Rep. 683; *Ricketson* v. *Milwaukee,* 81 N. W. Rep. 864; *Wells* v. *Burnham,* 20 Wis. 119; *Kneeland* v. *Milwaukee,* 18 Wis. 411. The statute does not make it the duty of the City Engineer to do anything of this work. His plans and specifications are not notice to the public. *Sterling* v. *Galt,* 7 N. W. Rep. 471. No appropriation was made by the council covering the item of one-fifth of the cost which, under the law, is paid by the city. *Roberts* v. *City of Fargo,* 10 N. D. 230, 86 N. W. Rep. 726.

*H. F. Miller (John E. Greene,* of counsel), for respondent.

At the meeting of the council, July 5th, when the ordinance was first read, there were ten aldermen present whose names were recorded, and they all voted yea on the first reading of the ordinance. The record of the vote on the final passage shows eight members voted yea, being the whole number present. This is sufficient compliance with the statute. § 2143, Rev. Codes; *Bayard* v. *Barker*, 40 N. W. Rep. 818.

WALLIN, C. J. This action is brought to annul a city paving tax of the city of Fargo, and to enjoin the county treasurer of Cass county, and his successors in office, from collecting said tax. The tax in question was attempted to be assessed by the officials of the city of Fargo pursuant to the provisions of chapter 41 of the Session Laws of 1897; and a consideration of the questions presented in the record will require a construction of said chapter, as well as chapter 42 of the Sessions Laws of 1899. The case is here for trial de novo, but there is practically no dispute as to the existence of the decisive facts of the case. In substance, the plaintiff alleges that he is the owner of a certain city lot described in the complaint, which fronts on Ninth street in the city of Fargo, and which is also situated within a certain territorial area of said city, designated by the city officials as "Improvement District No. 2." It is alleged and conceded that subsequent to the 19th day of September, 1898, certain public improvements consisting of grading, curbing, and paving, were constructed upon all the avenues and streets lying and being within said improvement district No. 2, including the said Ninth street, and in front of plaintiff's said lot; that all of said improvements were made by one James Kennedy, and acording to plans and specifications furnished by the city engineer of said city, and that said Kennedy has been paid therefor in bonds or warrants drawn upon the so-called improvement district No. 2 fund, and so paid to the amount of $14,-495.15. Said improvements were made by said Kennedy under the terms of an agreement in writing signed by him on the one part, and by the city of Fargo, by its acting mayor, on the other part, and said writing was signed and dated on September 20, 1898. It is alleged and conceded that after said agreement was signed the tax in question was assessed in the manner hereinafter stated, and that the same has not been otherwise assessed, or attempted to be assessed. The city engineer, acting and assuming to act pursuant to the provisions of § 7 of chapter 41 of the Sessions Laws of 1897, proceeded to estimate and calculate the amount necessary to be assessed upon the several lots and parcels of land lying within said improvement district, as a means of levying a tax with which to pay the cost of said public improvements. Said estimate of said city engineer was reduced to writing and dated on the 24th day of April, 1899, and on said date was filed with the city auditor of said city. It is further conceded that said estimate and calculation for said tax so made and filed by said city engineer was apportioned upon the basis of the superficial feet in each of said lots and parcels situated within said im-

provement district No. 2. It is further conceded that on the day said city engineer filed his said estimate with the city auditor, viz. on April 24, 1899, the city council of said city met and took action with respect to advertising said estimate of the city engineer as follows: "Alderman Lewis moved that the auditor be instructed to publish the paving assessment for the improvement districts numbered 2, 4, 5, and 6, according to law." Whereupon notice of a meeting of the city council was duly advertised for May 8, 1899, to hear objections, if any were made by taxayers, to said engineer's estimate for assessment in said improvement districts. Pursuant to such notice the city council met on said May 8th, and it appears from the official record of said meeting that the plaintiff and 28 other property owners had filed a protest and petition, which was considered by the council, and which is referred to in the record of the meeting as follows: "A protest and petition signed by twenty-nine property owners in improvement district number 2 protesting against the excessive assessment of said district, and petitioning that said improvement districts numbers 2, 3, 4, and 5 be consolidated in one district, was read." Whereupon "Alderman Clary introduced and moved the adoption of the following resolution: 'Whereas, the city engineer has proceeded to calculate the amount specially assessed for grading, paving, and curbing each lot and parcel of land within improvement districts Nos. 1, to 6, inclusive, of the city of Fargo, N. D., under the Laws of 1897 of North Dakota, and filed the same with the city auditor of said city; and, whereas, the law of 1897 relative to the assessment of such grading, paving, and curbing has since been amended; and, whereas, there is grave doubt as to the legality of the assessment made as aforesaid; Therefore be it resolved, that the assessment heretofore made be, and the same is hereby, disregarded, and the special paving assessment committee heretofore appointed by this council be requested to forthwith assess all lots and parcels of land within said improvement districts Nos. 1 to 6, inclu- ive, of the city of Fargo, according to law.'" Said resolution was adopted by the council after excluding district No. 6 therefrom. It is conceded that no action with respect to this assessment was ever taken by any "special paving assessment committee," as was directed to be done by the above resolution of the city council, or otherwise. It is further alleged and admitted that on May 22, 1899, at a meeting of the city council of said city said estimate for assessing the cost of said improvements, as made and filed by the city of engineer on April 24, 1899, was approved by resolution duly adopted by the city council; said resolution, so far as material, being as follows: "Now, therefore, be it resolved that the said assessment as made and returned returned by the city engineer and published by the city auditor are hereby approved; and the city auditor is hereby directed to make assessment rolls describing the property assessed and publish the same as required by law." Pursuant to the last-mentioned resolution of the city council, assess-

ment rolls were prepared by the city auditor, and after being certified and advertised pursuant to the provisions of § 8 of chapter 41 of the Laws of 1897, said assessment rolls were filed in the office of the city auditor, where they still remain on file; said assessment rolls being and constituting the only assessment rolls and the only assessment or attempted assessment ever made as a basis for the paving tax in question. Pursuant to said assessment, and after said completed assessment rolls were filed with the city auditor as before stated that officer certified said tax to the county auditor of Cass county; and in due course, and pursuant to said chapter 41 of the Laws of 1897, said tax was placed upon the tax list for the year 1899, and turned over to the county treasurer of Cass county for collection as other taxes are required to be collected. It will be observed that the entire process of estimating and assessing the tax in question, from its inception to its termination, was initiated and carried forward under and pursuant to the statute of 1897, above cited, and that in assessing said tax no attention whatever was paid by the taxing officers of the city of Fargo to an amendment of said act which by its terms went into effect on March 1, 1899. See § 6, c. 42, Laws 1899.

Upon these facts the appellant claims that the attempted assessment of the plaintiff's lot for the paving tax in question is illegal and void, and his counsel contends that after the amendatory act took effect (March 1, 1899) the city engineer was wholly devoid of authority to act, and therefore had no right to make or file the estimate and calculation dated and filed on April 24, 1899; and counsel's further contention is that even under the act of 1897, and without reference to any amendment thereof, the assessment is void, because the taxpayers never were permitted to be heard or to present their grievances to the council, based upon the engineer's estimate, for the reason that, at the session of the council duly appointed for that purpose, the council by its own deliberate action and resolution, disregarded the estimate of the city engineer, and then and there directed that the "special paving assessment committee be requested to forthwith assess all lots and parcels of land within said improvement districts Nos. 1 to 6 inclusive." Those contentions of counsel, based as they are upon the uncontroverted facts contained in the record, raise questions of law of serious importance and which may be broadly stated as follows: (1) Was the assessment of plaintiff's lot properly and lawfully made under the provisions of the original enactment, or, on the other hand, should the assessment have been made to conform to the act as amended in 1899? (2) If the original act, unamended, was in force when the attempted assessment was made, did the city officials of Fargo omit to substantially conform to the provisions of the original act with respect to the assessment in question?

Inasmuch as this court has unanimously reached the conclusion that the attempted assessment of the tax in question is illegal and

wholly void for the reason that the same was not made or attempted to be made under or pursuant to the statute as amended in 1899, which amendment, we hold, was in force when the city officials attempted to assess the tax, it will be unnecessary, in strictness, to answer question numbered 2, as above stated; but we are constrained to say that, in our opinion, the assessment, when tested by the requirements of the original statute, was wholly insufficient in matter of substance which is fundamental to the tax. We hold as to improvement district No. 2 that no sufficient hearing, such as the law contemplates, was ever accorded to the taxpayers with respect to the estimate made by the city engineer and filed on April 24th. While it is true that a meeting for this purpose was advertised, and the council met at the time stated in the notice, it is not true that the taxpayers were accorded a proper hearing at that meeting upon the justice of the estimate of the engineer then under consideration. The taxpayers at that meeting claimed and represented to the council that the estimate or assessment of the engineer was excessive, and petitioned the council to consolidate other districts with improvement district No. 2. What was the result?. The council then and there deliberately, and by a resolution placed upon its records, assured the taxpayers represented at the meeting that no further action would be taken by the council based upon the engineer's estimate then under consideration, and that said estimate should be, and then was, wholly "disregarded" and set aside. The resolution of the city council went further and directed that the "special paving assessment committee" theretofore appointed by the council should proceed to make a new assessment of the property, as a basis for the tax in question. We hold that this amounted to a declaration on the part of the council that any hearing as to grievances based upon the engineer's estimate would be superfluous; and further, the action of the council was tatamount to a solemn official assurance made by the council to such taxpayers that the latter would be again heard as to any future special assessment before both the special assessment paving committee and before the council, as provided by the terms of the amendment to the act. This promise and official assurance to the taxpayers was never kept. No opportunity was ever thereafter given for a hearing before the paving committee or the council. It is scarcely necessary to say that the rule is well settled in this jurisdiction that a tax upon real estate which is attempted to be assessed without permitting the taxpayer to be heard before the legally designated tribunal is a void tax. See *Power* v. *Larabee,* 2 N. D. 141, 49 N. W. Rep. 724; also the exhaustive concurring opinion of Chief Justice Corliss on page 152, 2 N. D., and page 727, 49 N. W. Rep.

This brings us to a consideration of question No. 1 as above set out. As has been said, it is our opinion that the amendatory enactment, which by its own explicit declaration took effect on March 1, 1899, was in full force and vigor at the time the assessment in ques-

tion was attempted, and that the assessment should have been made under the amended act. That the assesssment was not made under the amended act is conceded. It is true, the city engineer testified, in effect, that, immediately after the contract to make the improvements had been let to Kennedy, he began the work of making an estimate for the assessment,as was required by the terms of the original act then in force. He further testified that he had completed his work prior to February 1, 1899. But this statement of the witness must be considered in connection with another fact which is a conceded fact in the case, viz., that the estimate for the tax as made by the engineer bears date on April 24, 1899, and was filed with the city auditor on that date. As so qualified, therefore, the testimony of the engineer goes no further than a declaration by him that he had begun and partially completed the duty of making an estimate for this tax prior to March 1, 1899. The most important part of his work was not performed prior to said date, nor until a month and 24 days after said amendment took effect. The work of the engineer was valueless and wholly without legal significance as a basis for a tax until the same had assumed a visible and tangible shape in the form of a public document placed on file with the city auditor. Assessments must be evidenced by a record. But counsel for respondent say that inasmuch as the contract with Kennedy was let under the provisions of the original act, and while the same was in force, all subsequent steps in and about the subject-matter, and especially as to the mode and manner of distributing the tax by an assessment, must necessarily be taken pursuant to the requirements of the original act. To this broad conclusion of counsel we are unable to assent. In our judgment, to do so would be to disregard well-established principles of the law relating to the control of the legislature over municipal bodies of its own creation, and especially in relation to such control in matters of taxation. We think it is fundamental that a subordinate municipal corporation may, while engaged in the process of assessing and levying a tax pursuant to authority, be deprived of its power to consummate the process of taxation by legislative fiat; and it is, in our opinion, also well established that a minor political body may by the same supreme authority be deprived of all right or power to collect a tax, even after the same has been legally assessed and laid. Upon this point, see *State* v. *Railway Co.*, 9 Mo. App. 532; *Gravel Road Co.* v. *Sleeth,* 53 Ind. 35. See, also, Cooley, Tax'n (2d Ed.) p. 18; 25 Am. & Eng. Enc. Law (1st Ed.) p. 590, and note 1. In the case at bar the legislative assembly, after the contract for the construction of the improvements was entered into, so modified the original mode of assessing the tax as to abrogate all the power or authority given thereunder to the city engineer, and in lieu thereof made provision for the assessment of the tax through other agencies created by the amendatory act, viz., through a "special assessment paving committee," composed of three citizens, who were required to make the original assessment, and before whom taxpayers had a right to be heard as to grievances.

It is urged by counsel that the change in the original mode of assessing the tax made by the legislature in 1899 should be so construed as to be held inapplicable to the Kennedy contract, which was made prior to the date at which the amendment took effect; and it is contended by counsel that if the amendment is held to be in force from and after March 1, 1899, the result will be an impairment of the obligations of the contract, and hence that the amendment would be unconstitutional legislation, as applied to that contract, or to any other entered into under the act at a date prior to March 1, 1899. But we cannot accept this conclusion of counsel. We fail to see how or wherein the amendment, if fully acted upon, would or could deprive Mr. Kennedy of any rights secured by the contract with the city. It is conceded that, in payment for the work done under his contract Mr. Kennedy received before this action was commenced a large amount ($14,495.15) in warrants and bonds drawn on the fund of improvement district No. 2. It is equally clear that the contractor was not by the amended act deprived of his right to perform his contract by putting in the improvements, nor was he deprived of any right with respect to receiving compensation therefor in manner and form as provided by the terms of the contract. The amendatory act does not attempt to deal either with the terms of any contract for putting in improvements, or with the subject-matter of compensation to contractors. The whole matter of letting contracts and receiving compensation thereunder stands untouched, and we think wholly unaffected, by the amendment of 1899. Under § 6 of the original statute the burden of the cost of the improvements was divided between the taxpayers of the district and the city; the taxpayers to sustain four-fifths of the burden, and the city one-fifth thereof. The amendment of 1899 leaves all these features of § 6 intact. Nor are we able to understand how any securities which have been lawfully issued under contracts made prior to the date of the amendatory act can be impaired or affected by the fact that the legislature has seen proper to inaugurate a new and different mode of assessment, and of distributing the burden of the tax as between individual property owners in the taxing district. Under either and both modes of distribution the property within the improvement district must bear four-fifths of the total burden, and the city is required to bear one-fifth thereof. Hence we are unable to see that any substantial impairment of contract rights is to be apprehended as resulting from the amendment of the statute. At all events, it is certain that this record contains no facts upon which any such result may be predicated, and it is equally clear that none of the parties to this action could be injuriously affected if the provisions of the act as amended did impair the value of the warrants or bonds delivered to the contractor; and he is not complaining. See *People* v. *Bond*, 10 Cal. 563; *Tennessee* v. *Sneed*, 96 U. S. 69, 24 L. Ed. 610.

But counsel have taken the further position that the act as amended must be construed as having a prospective operation only,

and that it cannot be legitimately construed to act retrospectively as to a contract entered into six months prior to the date at which the amendment took effect. This postulate of counsel is sought to be fortified by the phraseology employed in the first part of § 7 of the amendment, which, in substance, requires the city council upon the letting of a contract to proceed "forthwith" to appoint a special assessment paving committee. We think it will suffice to say, as to this feature of the contention of counsel, what was said by this court in construing a similar provision of another statute. See *Emmons Co.* v. *Lands of First Nat. Bank,* 9 N. D. 583, 589, 84 N. W. Rep. 379. In that case we were considering the same word, "forthwith"; and it was there used, as in this statute, to indicate when an act was to be done by an officer in connection with tax proceedings. We there quoted with approval a general rule of construction as laid down by Sedgwick as follows: "Statutory prescriptions in regard to the time, form, and mode of proceeding by public functionaries are generally directory, as they are not of the essence of the thing to be done, but are given simply to secure system, uniformity, and dispatch in the conduct of the public business." Applying this rule of construction to the facts under consideration, we are clear that the word "forthwith," as used in § 7, should be held to be directory, merely. If the city council, after the amended act took effect, on March 1, 1899, had proceeded to act with reasonable promptness, there would have been no difficulty with respect to time consummating all the proceedings in and about the matter of assessing the tax under the act as amended. Had such proceedings been taken by the city council under the amended act, the tax would have become a lien and been certified to the county officials for collection in the year 1899, and thus no time would have been lost, and no creditor would have been delayed and no right would have been impaired. But this course was not pursued, and, on the other hand, the city council elected to ignore the very radical legislation which took effect on March 1, 1899, and proceeded to attempt to make the assessment in question pursuant to the provisions of the original act, which was not in force, and was repealed by said act of 1899. The power of a city to make special assessments has no existence unless it is expressly conferred, and when so conferred the mode and manner, if prescribed, must be pursued; otherwise an attempted assessment will be abortive. 2 Dill. Mun. Corp. § 769, and notes.

In support of the assessment in question, counsel further and finally insist that the same must be upheld by this court under the provisions of § 17 of the act of 1897. It will be conceded that this section of the statute is intended to be curative as to the tax proceedings, and its language is quite as broad as that found in any similar statutory provisions which have come under our observation. It declares in effect that no errors or omissions in assessing or levy-

ing any tax under the act "shall vitiate or in any way affect any such assessment unless it shall appear that by reason of such error or omission substantial injury has been done to the party or parties claiming to be aggrieved." Counsel, with respect to this provision, call attention to the fact that no evidence was offered at the trial tending to show that the plaintiff had suffered any substantial injury on account of the attempted assessment. As to this claim, while it is true that the plaintiff has offered no evidence of pecuniary loss as resulting from the pretended assessment, we cannot concede that he has suffered no "substantial injury" as to his rights as a tax payer. We think he has suffered such injury, and has been prejudiced, in that a pretended assessment has been made without authority of any law, and whereby a heavy financial burden has been laid or attempted to be laid upon his property without due process of law. We are aware that some courts, and those of the highest respectability, hold to the doctrine that the taxpayer should receive no relief from any alleged tax in a court of equity until he has first alleged and proved that the tax complained of is substantially unjust or unequal. Other courts do not accept this doctrine. In this jurisdiction the contrary rule is firmly established by repeated adjudications. In the cases cited below, relief in equity against illegal taxes was granted to suitors without exacting from them, as a condition, proof that any pecuniary injury had resulted to them by reason of the action taken by taxing officials. We cite only a few out of a large number of such cases: *Farrington* v. *Investment Co.,* 1 N. D. 102, 45 N. W. Rep. 191; *Power* v. *Larabee,* 2 N. D. 141, 49 N. W. Rep. 724; *O'Neil* v. *Tyler,* 3 N. D. 47, 53 N. W. Rep. 434. As was said in the opinion in *Power* v. *Larabee,* page 150, 2 N. D., and page 726, 49 N. W. Rep.: "From grave considerations of public policy, the law will presume an injury;" and in the same case the rule laid down in *Barber* v. *Evans,* 27 Minn. 92, 6 N. W. Rep. 445, was applied, and relief was granted in equity unconditionally. To this should be added the consideration that upon the record before us we do not discover mere errors and omissions in and about the matter of assessing a tax. On the contray, we find from the record a pretended assessment, only, and one not attempted to be made under the provisions of any existing law governing the matter of assessments. The law in force required that the assessment should be made by a paving committee of three citizens, and, further, that any objecions or grievances of taxpayers should be heard, after due notice, before such committee. These fundamental provisions were severally and wholly ignored by the city officials. The record presents a case of total failure to act under the law, and does not present a case of mere irregular action.

The judgment of the district court will be reversed, and this court will direct the entry of judgment for the relief demanded in the complaint. All the judges concurring.

Addenda: The foregoing opinion was handed down on November

I, 1901, and no petition for a rehearing in this court has ever been filed; but within the time therefor a request has been filed, in which counsel on both sides join in urging this court to pass upon certain questions arising upon the record, and to which reference has not been made in the opinion handed down. We have decided, for various reasons to accede to this request only in part. In the decision already made, this court has held that the paving tax of which the plaintiff complains is illegal and void, and this holding gives the plaintiff the full measure of relief which he is entitled to receive from the courts. But the city officials are in a widely different position. They are naturally and properly desirous of acting intelligently with reference to the legal status which now exists, and which has resulted from their efforts, hitherto abortive, to assess a tax to cover the expense incurred in putting in the improvements upon the streets of the city, as shown by the evidence in this case. We have, therefore, under the circumstances of this case, concluded to pass upon one further ·matter to which our attention has been particularly called by counsel on both sides.

It appears that a certain ordinance was attempted to be enacted by the city council creating and establishing certain districts within the city, denominated "Improvement Districts," and which districts were numbered from 1 to 7 inclusive. The contention of the plaintiff is that this ordinance was never legally adopted by the city council. This ordinance, at a regular meeting of the council, was given its first reading on July 5, 1898, and was read a second time and put upon its final passage at a regular meeting of the city council held on July 13, 1898. The official record of the proceedings had with reference to the final passage of the ordinance was put in evidence, and it is conceded that the same embraces the only record ever made in reference to the matter of adopting the ordinance. This record is as follows: "July 13th, 1898. Adjourned regular meeting of city council. Present at roll call Aldermen Allen, Ames, Craig, Cummings, Hill, Ostbye, Stanford, and Stern. The ordinance entitled 'An ordinance creating and establishing improvement districts numbers 1, 2, 3, 4, 5, 6, and 7, in the city of Fargo, and defining the boundaries of the same,' read the first time July 5th, was read the second time and placed upon its final passage, on call of the roll eight members voting 'Yea.'" The validity of the ordinance is challenged upon the ground that the official record of the proceedings of the city council does not show that the yeas and nays were taken upon the passage of the ordinance. It will be conceded that oral evidence would be inadmissible upon this point, and none was offered in this case. The decision of the question presented turns upon the construction to be placed upon § 2143, Rev. Codes, 1899, governing the adoption of city ordinances. The section provides as follows: "The yeas and nays shall be taken upon the passage of all ordinances * * * which shall be entered upon the journal of its proceedings." This statute clearly embraces two requirements,

viz.: First, that the yeas and nays shall be taken upon the passage of all ordinances; second, that the same (the yeas and nays) shall be entered on the journal of the proceedings of the council. It appears from the entries in the journal of the proceedings that eight aldermen, whose names appear in the journal, were present at roll call when the council assembled on July 13th, 1898, but the statute we are considering does not require entries to be made in the journal showing who were present at the opening of a meeting of the city council. The mandate of the statute lays hold of the very act of passing an ordinance, and when that act occurs the statute requires the entries to be made in the official journal, showing that the yeas and nays were called upon the passage of the ordinance. Statutes which are identical in meaning with § 2143, supra, will be found in many city charters, and the same have received a construction in the courts of several states, and there are conflicting judicial interpretations of the statute. In New York the courts have held that the statute is directory merely and hence, that the mere form or manner of passing the ordinance is of subordinate importance. See *Striker* v. *Kelly,* 7 Hill, 29, affirmed in 2 Denio, 323; *Elmendorf* v. *City of New York,* 25 Wend. 693. But the better opinion, and the decided weight of authority, is that such statutes are designed to accomplish an important public purpose, and hence their strict observance cannot be dispensed with. The purpose of the lawmaker is to fix upon individuals personal responsibility for city legislation. In the cases cited below the courts have held that the statute is to be considered as a mandatory enactment. *Morrison* v. *City of Lawrence,* 98 Mass. 219; *Steckert* v. *City of East Saginaw,* 22 Mich. 103; *Tracey* v. *People,* 6 Colo. 151; *Brophy* v. *Hyatt.* 10 Colo. 223, 15 Pac. Rep. 413; *Sullivan* v. *City of Leadville,* 11 Colo. 483, 18 Pac. Rep. 736; *Cutler* v. *Town of Russellville,* 40 Ark. 105; *Rich* v. *City of Chicago,* 59 Ill. 287; *Town of Olin* v. *Meyers,* 55 Iowa, 209, 7. N. W. Rep. 509; *O'Neil* v. *Tyler,* 3 N. D. 47, 53. N. W. Rep. 434. The rule as laid down in the series of cases last cited is approved by Judge Dillon. See 1 Dill. Mun. Corp. § 291. In the case at bar the journal shows that when the ordinance was placed upon its final passage the roll was called, "eight members voting 'yea.'" But it will be observed that this entry in the journal conveys no information as to the personnel of the eight aldermen who cast the affirmative vote. Their names are not given in the journal entry. Under the authorities, no presumption of fact arises that aldermen who were present when the council convened, and answered to their names, remained until the vote was taken. The leading case is *Steckert* v. *City of East Saginaw,* supra, in which Judge Cooley, speaking for the court, uses this language: "The actual attendance on such a body will frequently be found to change materially from hour to hour, so that a record that a vote was passed unanimously would be very slight evidence that any particular member present at the roll call voted for it." Further

on in the opinion the court say: "What is designed by this statute is to fix upon each member who takes part in the proceedings on these resolutions the precise share of responsibility which he ought to bear, and that by such an unequivocal record that he shall never be able to deny either his participation or the character of his vote. But, manifestly, we cannot determine in the present case, with any certainty, that any one of the aldermen named—Alderman Buckhout, for example—actually voted for the resolution in question. We know he was present. when the council convened, but we have no record which points specifically to his individual action afterwards." The reasoning in this case cannot well be improved upon, and as the same meets with our entire approval, we shall not undertake to enlarge upon the question. Under the authority of the cases cited, we shall be compelled to hold that the evidence in this case fails to show that the ordinance in question was legally enacted. In requiring the yeas and nays to be entered upon the journal of the proceedings of the city council, it was the legislative purpose that such entries should be a lasting memorial of the individual action of the members of the local legislative body. This vital feature is lacking in the case before us, and we are not at liberty, under the authorities, to supply the omission by mere presumptions as to who voted for the ordinance and who did not. The law in force as construed by the courts, required that the names of aldermen should appear in the journal entries. In no other way can individual responsibility be fixed upon members of the council.

It may be proper to add that what was said in the opinion first handed down concerning the contract in question, and the bonds and warrants delivered to the contractor in payment for the improvements in question, must be strictly limited to the features of the case then being discussed by the court, wherein we said in substance, that the amendatory statute of 1899 did not, in our opinion, so operate as to impair the obligation of the contract to do the work, or impair the value of the securities issued in payment therefor. Whether the fact that the ordinance creating the improvement district in question—No. 2—is adjudged to be void will or will not operate to destroy the value of any such securities now outstanding is a question not before this court, and upon which we refrain from expressing an opinion. All the judges concurring.