L. R. BAIRD, as Receiver of the First State Bank of Wildrose, an Insolvent Corporation of the State of North Dakota, Appellant, v. COUNTY OF DIVIDE, a Municipal Corporation, Respondent.

(228 N. W. 226.)

Opinion filed December 10, 1929.

*Divet, Shure, Murphy & Thorp,* for appellant.

*E. J. McIlraith* and *Paul Campbell,* for respondent.

BIRDZELL, J. This is a sequel to the case of Divide County v. Baird, 55 N. D. 45, 51 A.L.R. 296, 212 N. W. 236. In the lower court a judgment was entered dismissing the action and the plaintiff appeals. For a cause of action the plaintiff alleges that he is the receiver of the First State Bank of Wildrose, a banking corporation located in the city of Wildrose in Williams county, which became insolvent and suspended payment on the 20th day of December, 1923; that the defendant is a public corporation and political subdivision of the state of North Dakota; that at the times mentioned in the complaint there were located in the county of Divide a number of state and national banks qualified to act as depositories of public funds within the county of Divide; that on the 20th day of September, 1923, the First State Bank of Wildrose was the owner of certificates of indebtedness of public corporations in Divide county as follows:

| Debtor | Payee | Date | Amount |
|---|---|---|---|
| 1. Township of Frazier | First State Bank of Wildrose | Sept. 4, 1923 | $500 |
| 2. Township of Frazier | First State Bank of Wildrose | Sept. 4, 1923 | 500 |
| 3. Township of Frazier | First State Bank of Wildrose | Sept. 4, 1923 | 500 |
| 1. Palmer Township | First State Bank of Wildrose | Sept. 18, 1923 | 1,000 |
| 2. Palmer Township | First State Bank of Wildrose | Sept. 18, 1923 | 1,000 |
| 3. Palmer Township | First State Bank of Wildrose | Sept. 18, 1923 | 1,000 |
| 1. Montrose School Dist. | First State Bank of Wildrose | Sept. 20, 1923 | 1,000 . |
| 2. Montrose School Dist. | First State Bank of Wildrose | Sept. 20, 1923 | 975 |

Total ................................................ $6,475

and accrued interest.

It is then alleged that on the 18th day of October, 1923, the county of Divide deposited with the First State Bank of Wildrose the sum of $6,500, being public moneys of the county, "notwithstanding the fact that the said First State Bank of Wildrose was at all times located in the county of Williams and that there were located within said county of Divide at said time a large number of state and national banks competent to act as depositories of public moneys;" and that as security for this deposit the county received and accepted from the First State Bank of Wildrose a sufficient bond for the repayment of said moneys and at said time it unlawfully exacted and received from said First State Bank of Wildrose, as additional collateral security for the repayment of said public moneys so deposited, the above described

evidences and certificates of indebtedness, holding the same for the use and benefit of the bank and the plaintiff as receiver. Upon information and belief it is alleged that upon maturity of these certificates they were collected by the defendant with interest; that the proceeds are the property of the plaintiff and that he had demanded payment but that the defendant had refused and neglected to pay the same. Judgment is asked for a return of the certificates or their proceeds with interest.

The defendant answered admitting the formal allegations of the corporate character of the parties, the insolvency of the First State Bank of Wildrose and the qualifications of the plaintiff as receiver. With respect to the substance of the complaint it alleged that in the month of September, 1923, the townships of Frazier and Palmer and Montrose school district, being desirous of raising funds upon certificates of indebtedness for their respective needs, made application to the board of county commissioners to aid them in raising such funds and that with the purpose of aiding these municipal corporations the county of Divide advanced to them $1,500, $3,000 and $1,975, respectively, and as evidence of such advances the county received and held the certificates of indebtedness above enumerated; that for the purpose of carrying out these transactions the parties utilized as an agency the First State Bank of Wildrose; that for convenience and expediency and in entire good faith the county permitted the transaction to take the form of a deposit with the First State Bank of Wildrose, the certificates of indebtedness not being delivered to the latter nor assigned to the defendant county but being received by the county direct from the municipal corporations as evidence of their indebtedness and as security for the funds advanced to them through the agency of the bank. By reason of the premises the defendant claims the moneys collected upon the certificates of indebtedness as its own and that it is not indebted to the plaintiff. By way of counterclaim the defendant pleads a judgment against the plaintiff as receiver in the sum of $8,015.23, entered in the case of Divide County v. Baird, supra, and prays for a dismissal of this action; but in the event the plaintiff's claim or any part thereof be allowed that the defendant's judgment be offset against the amount so allowed.

Replying to the counterclaim the plaintiff alleges that on appeal

this court reversed the judgment of the district court of Divide county, in so far as the same went against the plaintiff as receiver and in so far as the same authorized the foreclosure of the pledge therein set forth, and states that the district court of Divide County was without jurisdiction to enter judgment upon the remittitur against the plaintiff as receiver in any sum whatsoever; and if judgment was entered as alleged by the defendant that the same is void and of no force or effect.

The case was tried before the district court of Divide county without a jury. The plaintiff's case was stipulated. It is stipulated, among other things, that the First State Bank of Wildrose was located in Williams county and that there were located in Divide county a number of state and national banks qualified to act as depositories of public funds; that on the 20th of September, 1923, the bank owned the certificates of indebtedness heretofore enumerated; that there had been paid to the defendant as the proceeds thereof the sum of $7,014.89. The proceedings of the board of county commissioners of Divide county are set forth, showing that at the regular July meeting, held on the 19th day of September, a motion was made that the First State Bank of Wildrose be designated a depository of public funds in accordance with House Bill No. 194 of the Session Laws of 1923 and a bid submitted by the bank and that this motion was carried; that on or about the 15th day of October the bank filed a depository bond which was duly approved and deposited with the county auditor and later accepted by the board. It is stipulated that as a part of the negotiations leading up to the designation the county of Divide required the bank to pledge as collateral security for the repayment of any moneys received from the county the certificates of indebtedness previously described, and that on the 18th day of October, 1923, the county of Divide deposited the sum of $6,500 of public moneys of the county, received a certificate of deposit and that the bank had never repaid the money so deposited. It is further stipulated, subject to objection as to materiality, that in the prior action the defendant herein had judgment against the plaintiff in the sum of $8,015.23.

For the defendant the county auditor testified, over objection that such testimony was immaterial and incompetent and that it purported to dispute the record of the county, that the municipal corporations

referred to had asked the board of county commissioners for assistance in handling certificates of indebtedness so that they might secure cash; that they were seeking a method by which this could be accomplished, claiming that all the banks in which Divide county was depositing money were on the north side of the county; that these corporations did business with Wildrose and wanted some of the deposits of Divide county to be placed down there; that he had called on the cashier of the First State Bank of Wildrose who later came before the board of county commissioners advising them that he would handle certificates of indebtedness so outstanding warrants could be taken up and the corporations placed on a cash basis; that he would pledge the certificates of indebtedness with the county treasurer to finance these districts; that the purpose the county commissioners had in mind in designating the bank a depository and placing money therein was to assist the districts in getting the money; that the money furnished by the county was to be used for the purchase of their certificates of indebtedness. The exact understanding, according to this witness, is perhaps best reflected in his answer to the following questions: "Q. Do I understand, then, that the purpose of the county commissioners in designating the bank there and placing the money in the bank was to make that transaction a formality that would assist those districts in getting this money? A. Yes. Q. And state whether or not it was the purpose of the county commissioners that the money placed in the county and placed in the Wildrose banks was to be used in paying these certificates? A. It was the understanding by the board of county commissioners and the officers in the First State Bank of Wildrose that the money was to be used to purchase certificates of indebtedness. Q. (By the court) What do you mean by purchasing them? A. That is the way it was arranged. Q. Wasn't the Wildrose bank going to get those certificates? A. No, they took the certificates of indebtedness from the districts and gave them the cash and then took the certificates of indebtedness up to the county treasurer and received the cash."

The county received the certificates of indebtedness before any money was turned over to the bank and retained them until they were paid in full. It was stipulated in the former action, Divide County v. Baird, 55 N. D. 45, 51 A.L.R. 296, 212 N. W. 236, that, inasmuch

as the certificates could be collected without foreclosure, the county might proceed to collect them, holding the proceeds to abide the final results of the action; this without prejudice to the rights of the parties on appeal or otherwise.

Carl. Schultz, one of the county commissioners of Divide county, testified, over objection similar to that interposed to the testimony of the county auditor, that representatives of Montrose school district and Palmer and Frazier townships had negotiated with the board of county commissioners to see if some deal could not be made whereby the county could deposit money in the bank of Wildrose, so that the bank could take up the certificates of indebtedness of the corporations and pledge them to the county as security; that arrangements were made with one Christenson, representing the bank of Wildrose, whereby the county would receive the certificates of indebtedness and deposit the money in the bank, the bank acting in a way as an agent for the county; that the regular proceedings were had by the county commissioners for the appointment of the bank as a depository with the additional understanding that the county should receive the certificates as security, all of which was for the purpose of carrying out the arrangements in behalf of the townships and the school district.

Christenson, the cashier of the bank, testified, over like objection, that before the bank was designated as a depository he had appeared before the county commissioners to see if it was possible for them to put money "outside of the county. I was just wondering in what way we could manage it so we could get together in the form that the testimony shows." He had had negotiations with the districts in question, as a result of which the bank was to take the certificates of indebtedness and pledge them back to the county for a like amount of money; that there was an agreement that the money derived from the county should be available to the two townships and the school district.

Einer Tweet testified that he was chairman of the township board of Palmer township; that he appeared before the county commissioners for the purpose of realizing money upon certificates of indebtedness of the township; that the township had a number of outstanding warrants and, the law being passed that required them to go on a cash basis, he appeared before the board to try to find some way of financing the township. To use his own words, "I asked the county commission-

ers if it would be possible that they deal direct with the township, and it seems that there was no way of doing that so they tried to deal with the banks in handling the certificates." The certificates were issued in the courthouse and delivered to Christenson. Continuing, the witness testified: "Q. Was there anything said between yourself and the county commissioners or by the county commissioners at that time regarding any arrangement that they would make with the First State Bank of Wildrose? A. I think it was mentioned that they would do that if they could hold their certificates as collateral for the money put in there." According to the stipulation, the bank was designated a depository on the 19th of September, and on the 20th day of September the bank was the owner of and possessed as part of its assets the certificates of indebtedness. The depository bond, however, was not approved until the 15th of October. The money of the county was deposited in the bank on the 18th of October, and a certificate of deposit issued on the same date payable to the order of the county treasurer drawing interest at $5\frac{1}{2}$ per cent per annum "if left twelve months" and containing the notation "Not subject to check." The books of the bank show that Frazier township was credited with $1,503.50 on September 22d; that Palmer township was credited with $3,017.50 on September 25th; that Montrose school district was credited with $1,986.45 on September 27th and with $2,491.61 on October 20th; that following the credits given prior to October 18th, checks were honored by the bank before the receipt of the money of the county.

The trial court found the existence of an arrangement whereby, through the agency of the Wildrose bank, the county advanced $6,475 for the purchase of the certificates of indebtedness of the townships and the school district, by proceeding with the formality of designating the bank as a depository and that, through the agency of the bank, the money was delivered to the designated corporations upon the delivery of the certificates of indebtedness to the county. The appellant challenges these findings as being contrary to the stipulation that on the 20th day of September, 1923, the bank was the owner of and possessed as part of its assets the certificates of indebtedness in question; also, as being based upon incompetent evidence received over appropriate objection.

As previously stated, it is stipulated that the First State Bank of

Wildrose is located in the county of Williams and that at all times mentioned in the proceedings there were located in Divide county a number of state and national banks qualified to act as depositories of public funds within the county of Divide. Section 714a4, of the 1925 Supplement to the Compiled Laws of 1913, authorizes any state bank to be designated a depository of public funds "by the proper board as herein defined," and § 714a5 provides that in counties where only one bank is located or functioning the board may designate such bank as a depository or it may designate another state or national bank or banks within the state or the Bank of North Dakota; and that in counties where there is no bank in existence or functioning the board may designate the Bank of North Dakota or any state or national bank or banks outside of such county and within the state. Unless this section be read as a limitation upon the power of the board of county commissioners to designate depositories outside the county, it is meaningless. It clearly was so intended. That no general authority exists for county commissioners to designate at depositories banks outside the county further appears from another section of the depository law, which provides for the clerk of the board notifying all the banks *in the county,* state and national, at least ten days before the meeting at which depositories will be designated, stating in general the factors that will enter into the consideration of the sealed competitive proposals. Since, under the stipulated facts, the conditions did not exist under which the county commissioners were authorized to designate a bank outside the county as a depository, whatever proceedings were had looking toward the designation of the Wildrose bank were wholly irregular and ineffectual.

Are the irregular proceedings of the county board which purport to express the contractual relations between the Wildrose bank and the county within the protection of the parol evidence rule? Counsel for the appellant in invoking this rule do not distinguish between applying it in support of a record of valid action and applying it in a general attempt to support a record of invalid action and to thus subvert the real transaction. It may be assumed that where public records of the acts and transactions of a governing body are required to be kept, such records may not be supplemented or contradicted by parol evidence (Pickton v. Fargo, 10 N. D. 469, 88 N. W. 90), particularly

concerning matters required to be stated therein. 22 C. J. page 1423. But this rule does not preclude a showing "not inconsistent with the record that a certain action evidenced therein was improper" (C. J. supra; Bangs v. Snow, 1 Mass. 181); nor a showing that the public body was wholly exceeding its authority. Strahan v. Malvern, 77 Iowa, 454, 42 N. W. 369. In the Massachusetts case cited it was held that the records of a parish as to grants of money might be contradicted by parol evidence; that as parishes had no authority to grant moneys except for certain purposes those who were injured by a grant in excess of the authority would be remediless unless permitted to dispute the record by showing an abuse of authority. Similarly, in the Iowa case, where authority was vested in the city council to purchase land for use as a street and where proceedings were had prima facie for that purpose, it was nevertheless permitted to be shown that the lands were purchased for a different purpose—one not authorized—and that the proceedings were colorable only. When the instant case is viewed in the light of the admitted extraneous facts, independent of the record, there is not even a semblance of regularity in the transaction.

This is not a case where public policy forbids going behind a public record to ascertain facts, such, for instance, as to whether a number of legislators voted affirmatively upon a bill. To invoke the parol evidence rule in support of a record such as we have here is tantamount to asserting that the parties affected by the record are precluded from showing that the transaction is in fact different from the recorded evidence therof. It is to assert, in substance, that the party in whose favor the recorded evidence operates is entitled to invoke an estoppel against any contrary assertion. That no such estoppel exists against the county in the instant case may be readily demonstrated. Conceding that the county might be estopped by the acts of its officers or the recitals in its contracts, as in the case of estoppels against individuals, yet it is necessary that the one invoking the estoppel should have been misled, and this element is not present in the instant case. The record shows that the cashier of the bank not only had the presumptive knowledge that the law affords of the limitation upon the power of the county commissioners but also actual knowledge and that he took affirmative steps to circumvent the law. See 21 C. J. 1189, §§ 192 et seq. Besides, "The doctrine of ultra vires," says 21 C. J. 1194, § 194, "is

applied with greater strictness to public than to private corporations, and the rule is that a municipality or other public or quasi public corporation or agency is not estopped by an act or contract, which is beyond the scope of its corporate powers, especially where the party claiming the estoppel was aware of the municipal incapacity or used no diligence to ascertain whether it had the power which it assumed to exercise." It was clearly competent here to show by parol evidence the existence of facts which established that the Wildrose bank was not a legal depository of Divide county. In fact, counsel have stipulated in the record facts which show that it could not have been legally designated and having so stipulated they are scarcely in a position to invoke the parol evidence rule in support of the record made by the officers of the county. It is elementary that the parol evidence rule may be waived.

But, assuming that any such waiver as may be implied from the stipulation extends only to the proof of the facts which show that the bank could not have been legally designated as a depository, it seems to be contended that the true purpose of the transaction, which was to enable the bank to finance the districts in question through the use of the money to be deposited therein by the county, could not be shown in the face of the record afforded by the books of the bank and the proceedings of the county commissioners. In so far as the books of the bank purport to show that it acquired the certificates of indebtedness before the county money was deposited and honored checks of the districts upon the credits extended, they would operate merely as admissions contrary to the present contention that an arrangement existed whereby the moneys of the county were to be used for the purchase of these certificates or to be wholly available to the districts. The books can be contradicted. There is no rule of exclusion, so far as the books of the bank are concerned, that would prevent the actual arrangement between the bank and the county being shown. As between the bank and the districts, too, it could be shown that the credit was conditioned upon the contemplated disposition of the certificates of indebtedness. Apparently the certificates were not taken until the bank was designated. Since the records of the county show that its officers were exceeding the authority conferred upon them by statute, there is no reason why the real transaction may not be shown. A

record of an ultra vires act, known to be such by all parties to the transaction, does not, as heretofore indicated, prevent a party injured thereby from establishing its true character. We are of the opinion that the evidence supports the findings of the trial court, in so far as the court found that the bank was an agency of the county through which the money of the latter was made available to the townships and the school district upon the security, in part, of the certificates of indebtedness in question.

In this situation it is necessary to determine whether the county may retain the proceeds of the certificates of indebtedness as against the claim of the receiver of the bank. In the former action, Divide County v. Baird, 55 N. D. 45, 51 A.L.R. 296, 212 N. W. 236, the appeal was on the judgment roll. The evidence was not before us, and it was held that the facts therein found by the lower court did not support the judgment which authorized the foreclosure of the pledge. We were there concerned with the question of the charter power of the bank to pledge its assets as security for a deposit. The conclusion was reached that it had no such power.

It was there said (page 65) "In so far as the judgment below went against the receiver and authorized a foreclosure of the pledge, it must be reversed," and the conclusion was "It follows, from what has been said, that the judgment of the trial court, in so far as it decrees or authorizes a foreclosure of the pledge, must be and is hereby reversed." In response to a petition for rehearing it was again asserted (page 71) "In the record before us, which consists of the judgment roll, there are no facts found which in our opinion support the judgment of the court below authorizing a foreclosure of the pledge, and it was held in the original opinion that this portion of the judgment must therefore be reversed." This was adhered to. There was a further statement, both in the principal opinion and in the opinion upon petition for rehearing, to the effect that the right of the county to follow its funds into the hands of the receiver, if the evidence were such as to justify a finding that he held the same or any part thereof as trustee for the county under the principles announced in Grand Forks County v. Baird, 54 N. D. 315, 209 N. W. 782, was not determined. The county was denied relief upon the agreement of pledge which was incorporated in the findings upon which the judgment of foreclosure was based. It

now appears that the judgment entered 'upon the remittitur did not purport to disturb the county's possession of the certificates or their proceeds. In view of the limited record then .before this court and of the statement in the opinion with reference to the possible equitable rights of the county to follow its funds, it would seem that the judgment in that action was properly limited to a money judgment, without a right of foreclosure in the county based upon an illegal contract of pledge. What, then, is the position of the county in equity with reference to the proceeds of the certificates in question? The record now before us shows that the money of the county, by a tri-party arrangement, was to be used for the purpose of financing the districts, that the bank was to be used as a conduit through which the money of the county was to flow to the specified recipients, and there were to be returned certificates of indebtedness of equivalent amounts. Clearly, there is no equity in favor of the depositors or general creditors of the bank as respects the proceeds of the certificates of indebtedness, for the record shows that neither the money of the county nor the certificates of indebtedness would have gone into the bank except for the arrangement made. The certificates were regarded in effect as the equivalent of the money of the county. Stripped of all formalities the bank was merely an agency for the investment of the county's moneys in the certificates of indebtedness and the transaction being completed to the extent that the county's money is paid out and the certificates delivered to the county, the bank has no equity which entitles it or the receiver to rescind the transaction. True, some credit was enjoyed by the townships and the school district prior to the placing of the money of the county at their disposal, but it appears that no such credit was extended by the bank until the general arrangement was carried out to the point where the bank had been designated as a depository and there was, hence, every prospect that the plan agreed upon would be followed. To support the contentions of the receiver would be, in effect, to enhance the assets of the bank at the expense of the taxpayers of the county whose money, rather than that of the bank, had in reality been used to purchase the assets in question.

The judgment appealed from is affirmed.

BURKE, Ch. J., and NUESSLE, BURR, and CHRISTIANSON, JJ., concur.